Sullivan,
Oct. 5, 1926.

STELLA F. GOBRECHT *v.* HIRA R. BECKWITH.

WILLIAM E. GOBRECHT *v.* SAME.

The rule that a landlord is under no legal duty to repair premises leased by him, and that in the absence of warranty or deceit the tenant takes the premises as he finds them and cannot recover against the landlord for injuries sustained by reason of defect therein, does not apply to those portions of the premises over which the landlord retains control and which he furnishes for the common use of his tenants.

The evidence in this case did not show that the landlord relied upon an independent contractor for the proper construction of the premises. Whether

the duty to make the premises safe for the common use of his tenants was a personal duty which could not be delegated, was not decided.

Where a duty to use care is imposed and knowledge is necessary to careful conduct, voluntary ignorance is equivalent to negligence.

An objection to argument must be made in such form as to call attention to the specific error complained of and give opportunity for its correction.

Two ACTIONS ON THE CASE, for negligence, which were tried by jury before *Doe*, J., with verdicts for both plaintiffs.

The plaintiff William F. Gobrecht was a tenant of the defendant, occupying one room on the third floor of a block owned by the latter in Claremont. The plaintiff Stella is his wife. Upon the same floor the defendant maintained a bathroom for the common use of the female tenants of the block. The dimensions of this room were approximately 9 x 7 x 12 feet. It was an inside room without windows. It had two doors, one of which was unused, and one transom over the unused door. When the doors were closed, this transom was the only means of ventilation. Hot water was supplied by an instantaneous gas heater attached to a twenty-gallon storage tank. This heater was installed in the bathroom without a flue and was operated by gas furnished by the local gas company, which was of the variety known as water gas, containing thirty to forty per cent of carbon monoxide, an extremely poisonous gas.

Upon December 19, 1922, shortly after she had gone into the bathroom to take a bath, Mrs. Gobrecht was found lying on the floor unconscious, and the physician who attended her made a diagnosis of "gas poisoning or asphyxiation." It was the claim of the plaintiffs that her condition was due to the presence of carbon monoxide in the bathroom as a result of the operation of the heater, and that as a consequence her health was permanently impaired. In her suit she seeks to recover damages for this injury. Her husband sues to recover for the loss of her services and the expenses incurred as a result of the accident. Further facts appear in the opinion.

The defendant excepted to the denial of his motions for nonsuits and directed verdicts; to certain statements in the argument of plaintiffs' counsel; to the charge of the court, and to the denial of his requests to charge as more fully stated in the opinion.

After the death of Judge Doe, a bill of exceptions was allowed by *Burque*, J.

*Nathaniel E. Martin* and *Alfred W. Levensaler* (*Mr. Levensaler* orally), for the plaintiffs.

*Ira G. Colby* and *Murchie & Murchie* (*Mr. Alexander Murchie* orally), for the defendant.

BRANCH, J.   The defendant's requests for instructions raise a question regarding the duty of a landlord to his tenants which must be considered before his motions for directed verdicts can be passed upon.

The plaintiffs claimed that the accident was the result of a dangerous condition created and maintained by the landlord in a bathroom furnished by him for the common use of the tenants of the building.   By his third, fourth and fifth requests the defendant sought to have the court apply to this situation the well-settled rule that a landlord is under no legal duty to repair the leased premises, and that in the absence of warranty or deceit the tenant takes the premises as he finds them and cannot recover against the landlord for injuries sustained by reason of defects therein.   *Marston* v. *Andler*, 80 N. H. 564; *Petroski* v. *Mulvanity*, 78 N. H. 252; *Clark* v. *Sharpe*, 76 N. H. 446; *Dustin* v. *Curtis*, 74 N. H. 266; *Cate* v. *Blodgett*, 70 N. H. 316; *Towne* v. *Thompson*, 68 N. H. 317.

In all the cases where this rule has been applied, the accident happened because of defects in the leased premises themselves which had passed out of the control of the landlord and into the possession of the tenant.   The landlord's lack of control over the premises has been stressed in all these cases and seems to be regarded as one of the elements essential to bring a case within the rule.   See *Stevens* v. *Company*, 73 N. H. 159, 170.   The rule has never been applied in this state to those portions of the premises over which the landlord retains control and which he furnishes for the common use of his tenants, and although it has never been expressly decided by this court, it has been generally understood by the bench and bar that the rule which has been laid down in other jurisdictions prevails here.   That rule has been stated as follows: "It is generally held that where he (the landlord) retains possession of a portion of the leased premises for the use in common of different tenants, a duty is by law imposed upon him to use ordinary care to keep in safe condition this particular part of the leased premises, and if he is negligent in this regard and a personal injury results to a tenant by reason thereof, he is liable therefor."   16 R. C. L., Landlord and Tenant, s. 557.   This rule has been applied in the trial of many cases in the superior court, and the reason why it has never been expressly stated as the basis of a decision by this court is apparently that no one heretofore thought of questioning it.

In *Kambour* v. *Railroad*, 77 N. H. 33, 46, the generally accepted view of the law in this state was stated by *Young*, J., *arguendo* as follows: "The only duty the law imposes on a landlord for the benefit of his tenants, in so far as the leased premises are concerned, is that of not deceiving them as to the dangers incident to their use of which he does and they do not know (*Cate* v. *Blodgett*, 70 N. H. 316); but . . . in so far as the approaches to the premises are concerned, it is his duty to do whatever the ordinary man would do to enable them to enter and leave the premises in safety."

The recent case of *Saad* v. *Papageorge*, *ante*, 294, which involved an accident happening upon a common stairway, was decided upon the assumption that this was the law, and the court there said: "The construction of the stairway was such that its use by very young children as a stairway might be found to be contemplated, and so some protection for use for that purpose would be required. The duty of care may therefore be found to be owing, although it cannot be told in detail how the intestate happened to break or fall through the defective board. If he met his mishap in connection with his descent of the stairs, the duty was applicable." The law of this state therefore cannot be regarded as doubtful. The general rule above quoted prevails here.

This conclusion disposes of defendant's third, fourth and fifth requests and also of his first request in which the court was asked to take a middle ground and charge the jury that "if the defects complained of existed . . . when the tenancy began and there was no change made thereafter, the defendant is not liable."

The foregoing conclusion also disposes of the exceptions to the charge, which were all based on the theories of the law set forth in the above requests.

Defendant's second and sixth requests dealt with the subject of contributory negligence. The rule upon this point was correctly stated in the charge and there was no error in the denial of these requests.

Defendant's seventh request purported to state what would constitute ordinary care in this case. The jury was fully instructed as to the significance of the terms "negligence" and "reasonable care," and there was no error in the denial of this request.

The law being as above stated, it remains to consider the defendant's motions for directed verdicts. He argues that these motions should have been granted "for two reasons, viz: (a) there was not sufficient evidence to warrant the jury in finding that

defendant's negligence caused the injuries complained of, and (b) the plaintiff (Stella F.) was conclusively shown to have been guilty of contributory negligence."

The consideration of defendant's first proposition (a) involves two inquiries: 1. Was there evidence of negligence? 2. Was there evidence that the alleged negligence caused the accident?

What was the evidence of defendant's fault? A chemist who was called by the plaintiff as an expert on gases testified that when water gas is burned in a gas heater, carbon monoxide will always be released if there is imperfect combustion, and that even with a perfect burning flame some of this gas is likely to be formed when the flame strikes a cold surface; that in his opinion it would not be safe to install such a heater without a flue in a 7 x 9 room having no opening to the outside air because "it wouldn't take long for the oxygen content of such a space to become seriously depleted" and that as the oxygen was depleted the combustion of the gas would become more and more incomplete. Upon cross-examination he testified: "I cannot conceive of there not being carbon monoxide under the conditions as I understand them." He further testified that five one-hundredths of one per cent carbon monoxide in the air would cause "distinct symptoms of poisoning"; that one-tenth of one per cent would cause headaches; that four- or five-tenths of one per cent might cause death, and that one per cent will cause death quite rapidly.

Defendant in his argument places great emphasis upon the fact, which appeared after the expert had testified, that there was a transom over one of the doors in the bathroom which was open at the time of the accident, and argues that the omission of this fact from the hypothetical question to the expert "renders the answer valueless as evidence." The transom referred to was three feet wide and three and one-half feet high. It was hung at the bottom and tipped out from the top about seven inches into a hallway. How far the amount of ventilation furnished by this transom would ameliorate conditions in the bathroom was for the jury to determine. It cannot be said as a matter of law that it wholly destroyed the effect of the testimony above referred to. In fact, from this testimony the jury might properly conclude that the situation created and maintained by the defendant in this bathroom was almost ideal for causing death or serious injury from carbon monoxide poisoning to any person taking a bath therein.

Defendant sought to escape responsibility for the creation of this

situation upon two grounds: 1, that he had no knowledge as to the operation of gas heaters; and 2, that he entrusted the installation of this one to the local gas company. Neither of these excuses can avail him as a defense.

Being under a positive duty to exercise care in order to make the place safe, he was bound to inform himself as to the natural consequences of the operation of the apparatus which he installed. This principle is a commonplace in the law of master and servant (3 Labatt, Master and Servant, s. 1041) and is equally applicable here. Where a duty to use care is imposed and where knowledge is necessary to careful conduct, voluntary ignorance is equivalent to negligence.

His claim of reliance upon the gas company is equally unavailing. Many authorities hold that the landlord's duty to make safe those portions of the premises which he furnishes for the common use of his tenants is a personal one which cannot be delegated, and hence that he is responsible for the conduct of an independent contractor employed to install, maintain or operate them. See 23 A. L. R. 1009 note, s. 11, where the authorities are collected.

But it is unnecessary to invoke this rule in the present case, for the claim of reliance upon the gas company finds scant support in the evidence. The defendant testified that he had been an architect and builder for over thirty years and that when he built over his block he made the whole "inside arrangement" himself. From this testimony the jury may properly have found that he had more knowledge than he was willing to admit in regard to problems of ventilation and the operation of gas appliances. He did not testify that he asked the advice of the gas company's agents as to the safety of installing an instantaneous heater in the room in question or that he relied upon them to call his attention to any dangers which such an installation might involve. His testimony was that when he bought the block in 1915 there were no bathrooms on the third floor; that he subsequently had two bathrooms "rigged up"; that in February, 1921, he "arranged with the gas company to put in an instantaneous Pittsburg heater; that is, two of them, one in each bathroom"; that the pilot lights on these heaters sometimes went out and that the gas company recommended the substitution of the heaters in question, representing that when the pilot light went out there would be no escape of gas; that the change was made by the gas company in August, 1921.

It is plain that the gas company had nothing to do with the loca-

tion, size or construction of the bathroom in question. The company was not to blame for the fact that "there was no chimney," as the defendant testified. It merely installed a heater in a room designed and built by the defendant and later substituted a supposedly safer type for the one originally put in. There was no evidence of any defect in the work which the gas company's agents did. If a chimney had been available, the heater might have been connected with it, but the jury may have found that the gas company simply put the heater where they were asked to and made the best of the situation as they found it. Under these circumstances it is difficult to see how the absence of a flue or the inadequate ventilation of the bathroom could be attributed by the defendant to his reliance on the gas company's agents for a proper installation. The real trouble in this case was not that the heater was improperly installed but that it was installed in an improper place, and the defendant alone was responsible for the location and construction of the place.

The jury was therefore justified in refusing to accept either of defendant's excuses for his conduct, namely, ignorance, and reliance upon the gas company; and we are clearly of the opinion that there was sufficient evidence of negligence to sustain the verdict.

Defendant's further argument that there was no evidence that the alleged negligence caused the accident does not require extended consideration. The basis of this argument is stated in defendant's brief as follows: "Whether she fainted from overeating or general debility does not appear. Either cause is as plausible as that she was overcome by an excessive quantity of carbon monoxide gas." There is no basis in the evidence for the suggestion that Mrs. Gobrecht had overeaten. There was evidence that she was suffering from general debility which might have caused her to faint, but there was also evidence that her attack was not a mere fainting spell. The attending physician testified that he found her "practically lifeless." A pulmotor was used thirty or thirty-five minutes before she revived. The doctor made a diagnosis of "gas poisoning or asphyxiation." When she vomited there was a very strong odor of gas. Upon this evidence it was clearly for the jury to determine what the cause of her attack was. *Boucher* v. *Larochelle*, 74 N. H. 433.

The claim of the defendant that it conclusively appears that Mrs. Gobrecht was guilty of contributory negligence may also be shortly disposed of. The argument as stated in defendant's brief is that "the depletion of the air could only have been very gradual, and it is common knowledge that such a condition manifests itself to any in-

telligent human being in ample time to permit of its being remedied before injury occurs," and if "she persisted in lingering in an atmosphere increasingly difficult to breathe, in utter disregard of the warning her senses must have given her . . . no one is responsible for her injuries but herself." The court is by no means convinced that knowledge in regard to the effects of breathing depleted air is as universal as counsel assert it to be, but the fatal fallacy of this argument lies in the assumption that Mrs. Gobrecht "fainted" because the air in the bathroom was "depleted," when the evidence tended to prove that her loss of consciousness was due to the effect of carbon monoxide gas, — a matter which is not claimed to be within the field of common knowledge.

During the argument of plaintiff's counsel the following proceedings took place: *Mr. Martin,* arguing: "Well, now, what happens when the door is shut? Someone is occupying the bathroom, and they turn on the water for the tub; it brings the cold water into the tank, and automatically the heat starts, or in other words, in that little room seven by nine shut up tight the gas heater begins to burn and burns the oxygen in the room, and when the oxygen in the room is burned and the combustion of the gas is lessened, then the gas throws off the poison from the boiler, the gas, and it is called carbon monoxide." *Mr. Murchie;* "To that I except. That is not the evidence."

Obviously this exception was not taken in such a way as to raise any question of law according to the rule laid down in *Tuttle* v. *Dodge,* 80 N. H. 304. No request was made to the trial judge for a ruling and no ruling was made. If the point of the exception were clear, the informality of the manner in which it was taken might be overlooked, but the present argument of the defendant emphasizes the importance of following the correct procedure. It is now claimed that the exception was directed to the words "shut up tight" in counsel's description of the bathroom, and it is argued that these words constituted a misstatement of the evidence because there was an open transom over one of the doors. It is by no means clear that the words "shut up tight" were intended or understood as an assertion of the evidence, rather than a conclusion from it. Since the amount of ventilation furnished by the transom was problematical, counsel would clearly have been within his rights in arguing that it amounted to nothing, and the use of the phrase "shut up tight" may be regarded as only a vigorous way of stating this contention. But if these words be construed as stating a fact unsupported by the evidence, the exception was not taken in such a way as to call attention

to the error and permit its correction. The words descriptive of the room were thrown parenthetically into the middle of a long sentence describing the operation of the heater. The exception taken at the end of this sentence would naturally be interpreted as challenging the accuracy of this account and could hardly have been understood as having reference to the brief and incidental description of the room. If defendant's counsel had specified the point of his exception and obtained a ruling from the court, the error might easily have been corrected, but since the question was not properly raised at the trial, the exception must now be overruled. The order must therefore be

*Exceptions overruled.*

All concurred.