WHITNEY G. HUNTER and MARY IRENE HUNTER v. QUALITY HOMES, INC., a corporation of Delaware, and ANDREW E. MITCHELL.

(*August* 30, 1949.)

CAREY, J., sitting.

*Albert L. Simon* for plaintiffs.

*Henry A. Wise, Jr.,* and *Clarence W. Taylor* (both of the firm of Hastings Stockly, Walz and Wise) for defendant Quality Homes, Inc.

*Clair J. Killoran, John VanBrunt* and *T. Crawley Davis, Jr.,* (all of the firm of Killoran and VanBrunt) for defendant Mitchell.

Superior Court for New Castle County, No. 506, Civil Action, 1948.

CAREY, Judge.

I am unable to discover any proper basis, either in contract or in tort, to support a claim against Quality Homes, Inc., nor has any been suggested. It is not alleged that Quality Homes, Inc., knew of the defective installation or practiced any fraud or concealment upon the Hunters. It could not be contended that the rule of respondeat superior applies, since Mitchell is expressly described as an independent contractor in the complaint. No express or implied warranty is relied upon or even asserted. There is nothing to indicate that any contractual relationship existed between Quality Homes, Inc., and the Hunters prior to the date of the deed. In short, the complaint points out no legal duty owed by the corporate defendant to the plaintiffs which has been breached. The motion to dismiss as to Quality Homes, Inc., must be granted.

Mitchell's motion presents more difficulty. He argues, first, that he owed no duty to the plaintiffs and, second, if he was under any duty to them, that he has not breached that duty. The questions presented may be stated in this manner: (1) under the circumstances, did Mitchell owe any duty of care to anyone other than the builders who employed him; and (2) if so, do the facts

shown here demonstrate, as a matter of law, that he complied with that duty?

Affidavits filed on behalf of the plaintiffs ascribe the explosion to the fact that an air shutter was completely closed and locked in that position, thus preventing the admission into the combustion chamber of a proper amount of air, although a small amount was admitted. This resulted, it is said, in the gradual accumulation of a large quantity of soot and a carbon formation on the electrodes. On the date of the explosion this condition had reached a point whereby ignition was delayed momentarily (but not until the safety relay could operate) until sufficient gases had formed to cause the explosion when ignited. It is averred that no one other than Mitchell's representatives had ever touched, adjusted, or regulated the burner.

Affidavits filed on behalf of the defendant describe in great detail the mechanism and operation of an oil burner of the type here involved, with particular reference to a certain "infallible" safety device which was installed in this burner. This device is designed to automatically shut off the burner within sixty to ninety seconds after the starting time in case of flame failure for any reason. After such a shut-off, the burner can only be started again by the manual manipulation of a line switch. A printed instruction card was tacked up near the heater indicating rather clearly, inter alia, that, in case of stoppage, it should not be restarted until the ignition points or electrodes had first been examined for cleanliness and the safety control reset.

From these affidavits, it further appears that Mr. Seddon, who actually made the installation, tested and inspected it upon its completion early in August and again two or three weeks later. On both occasions, he found it to be in good working condition and operating properly. He says it was installed precisely according to the manufacturer's directions. It was also inspected and approved on or about August 28 by the Fire Marshal of Wilming-

ton or his representative. The latter inspection covered the electrodes, wiring, placement of burner and tank, general operation and working condition of all safety switch devices. Mr. Seddon never received any service calls from the plaintiffs or anyone else.[1]

This Court has heretofore given consideration to the liability of a manufacturer to remote purchasers for defective construction or manufacture. See *Gorman v. Murphy Diesel Co., 3 Terry* 149, 29 *A. 2d* 145; *Hartford Accident and Indemnity Co. v. Anchor Hocking Glass Corp., 5 Terry* 39, 55 *A.2d* 148. I cannot improve upon the following language in the *Gorman case* [3 *Terry* 149, 29 *A.2d* 147]:

"The general rule, as stated in the cited case, is that a contractor, manufacturer or vendor is not liable to third parties who have no contractual relations with him for negligence in the construction, manufacture or sale of the articles he handles. What is called the third exception to the rule is stated to be that one who sells or delivers an article which he knows to be imminently dangerous to life or limb of another without notice of its qualities is liable to any person who suffers an injury therefrom which might have been reasonably anticipated, whether there were any contractual relations between the parties or not. The exception, entitled perhaps to stand as a rule in itself, is based on the broad ground that the manufacturer of an article, though not inherently dangerous but which may become so when put to its intended use, owes a duty to the public to employ reasonable care, skill and diligence in its manufacture. If a machine negligently constructed is reasonably certain to imperil life or limb, it is a thing of danger; and where the manufacturer knows that the machine will be used, and without new tests, by persons other than the purchaser, a duty is imposed on him to use due care in its construction. As in negligence generally, liability is based on a reasonable foreseeability of

---

1. He says that Mitchell likewise received no service calls. How he would know this except from hearsay, does not appear.

danger; and knowledge of probable, not possible, danger is an essential element of the liability. *MacPherson v. Buick Motor Car Co.* 217 *N.Y.* 382, 111 *N.E* 1050, *L.R.A.*1916F, 696, *Ann. Cas.* 1916C, 440.

"An internal combustion engine, in and of itself, it not a thing of danger. It is an inert mass of metal. When put to its intended use it is imminently dangerous if negligently constructed. The manufacturer, in a proper case, ought to be answerable for want of care and skill in its construction, even though the injured person had no contractural relations with him."

I understand that the defendant agrees that the foregoing principles pertaining to manufacturers should be equally applicable to contractors, at least, within certain bounds. Indeed, it is hard to perceive why the duty imposed by law for defective manufacture should differ from that for defective installation, when a product is thereby rendered imminently dangerous. It is the probability of injury which gives rise to the duty and, in the case of an oil burner, careless workmanship in either respect may create the danger. The weight of modern authority supports this view. See annotations in 41 *A.L.R.* 79 and 123 *A.L.R.* 1201.

The defendant's position is that by reason of the operation of the safety mechanism installed on the burner, the "imminently dangerous instrumentality" exception is inapplicable. Conceding, arguendo, his failure to regulate the air flow properly, he argues that the use of this "infallible" safety device eliminated what may have been an otherwise imminent danger and that there was accordingly no "reasonable foreseeability of danger" from it. Moreover, he says, the operation of the safety mechanism would automatically disclose the dangerous condition before an explosion could actually occur and the onus of maintaining the burner in a proper working condition would thereby be shifted to the owner, who would then be in complete control of the system.

Should an installer be permitted, as a matter of law,

to escape the consequences of his own negligence by the mere fact that a safety device is installed? I think not. It is commonly known that all modern domestic burners are equipped with some type of safety device designed to shut off the burner in case of flame failure; nevertheless, for one reason or another, burners do occasionally explode. In the light of this knowledge, reasonable foreseeability of danger exists. Matters of common knowledge warn the installer that, if his work is done negligently, some one is likely to be injured. Faced with this warning, he assumes a certain duty to others—the duty to do the work with reasonable care and diligence—for the breach of which the law imposes a liability. This liability is based not upon contract but upon negligence. Of course, all the other elements of negligence liability must appear and all the usual defenses are available.. I hold that the use of a safety device in an oil burner in and of itself does not, as a matter of law, relieve the installer of his duty to use reasonable care in making the installation, since it cannot be held that such a device necessarily and certainly removes the danger which may arise from negligent workmanship.

The defendant also urges that the length of time which elapsed between the date of installation and acceptance of the burner and the date of the explosion negatives the conception that this burner was imminently dangerous when installed. In *Gorman v. Murphy Diesel Co., supra*, this reasoning was applied to a diesel engine which exploded after having been used safely by three different owners for sixteen months. The logic cannot be applied here, as a matter of law, under the allegations made by plaintiffs. They aver that it required this length of time for sufficient soot or carbon to accumulate in order to cause the explosion and that the explosion was the direct result of the alleged negligence. In view of these allegations, the point may be a jury matter and, in any event, cannot be resolved in defendant's favor under the present motion. Whether it will ultimately be left to the jury will depend upon the evidence produced at the trial.

With respect to the issue of negligence or breach of duty, the plaintiffs now contend that the doctrine of res ipsa lo-

quitur applies, although nothing in the complaint suggests a reliance thereon. Under the Delaware authorities, that contention cannot be sustained. The "transaction was (not) in exclusive management of defendant" nor was the result "so unaccountable that the defendant's negligence as a proximate cause of injury is the only fair inference to be drawn from the circumstances". See *Slack v. Premier-Pabst Corp.,* 1 *Terry* 97, 5 *A2d* 516; *Hartford Accident and Indemnity Co. v. Anchor Hocking Glass Corp., supra.* The plaintiffs must prove negligence, proximate cause and all other elements of their case.

■ On the other hand, the defendant contends that the affidavits raise no issue of negligence except by way of unwarranted inference. I disagree. The case of *Slack v. Premier-Pabst Corp., supra,* is not in point on this question. The narr in that case sought to raise an inference of negligence from the mere fact that a bottle of beer exploded. No facts were set forth from which, as a logical, probable and reasonable deduction, the negligence of the defendant could be inferred. In other words, the plaintiff there relied upon res ipsa loquitur but the Court held that the doctrine was not applicable and that the narr was defective in failing to set forth the facts constituting negligence. Here, by way of contrast, the complaint does recite the facts and charges a specific act of negligence causing the damage, and is substantially supported by affidavits. The issues raised are for the determination of a jury or trier of facts. None of the authorities cited by the defendant are inconsistent with his view, in my opinion.

The motion of defendant Mitchell must therefore be denied.