WILLIAM F. INMAN, an Infant, by SHIRLEY M. INMAN, His Guardian ad Litem, et al., Respondents, v. BINGHAMTON HOUSING AUTHORITY, Defendant and Third-Party Plaintiff-Appellant-Respondent. ARTHUR T. LACEY et al., Partners Doing Business under the Name of A. T. LACEY & SONS, et al., Third-Party Defendants-Respondents-Appellants.

WILLIAM F. INMAN, an Infant, by SHIRLEY M. INMAN, His Guardian ad Litem, et al., Appellants, v. ARTHUR T. LACEY et al., Partners Doing Business under the Name of A. T. LACEY & SONS, et al., Respondents.

Third Department, May 16, 1956.

*Israel Margolis* for William F. Inman, an infant, and another, respondents and appellants.

*Willard E. Pierce, Jr.*, for defendant and third-party plaintiff-appellant-respondent.

*Conrad E. Stearns* for Arthur T. Lacey and others, partners doing business under the name of A. T. Lacey & Sons, third-party defendants-respondents-appellants and respondents.

*Paul C. Gouldin* for Vincent J. Smith, Inc., third-party defendant-respondent-appellant and respondent.

FOSTER, P. J.  On May 24, 1954, an infant plaintiff fell from the back steps or porch of an apartment leased by his parents from the Binghamton Housing Authority, and sustained, so it is alleged, severe personal injuries.  Out of that accident there have arisen a multiplicity of complaints.  The infant plaintiff, through his guardian ad litem, sued the housing authority, and later he also sued the architects who designed the building and the builder who constructed it.  The housing authority brought a third-party action against the architects and the builder that alleges several theories of liability against each of them.

The infant plaintiff's claim of negligence is based in each of his cases upon the charge that the back porch of the building was so improperly designed and constructed as to create a dangerous and hazardous condition for the users thereof, especially children.  The housing authority's third-party complaint alleges two causes of action against the builder, one upon an indemnification agreement and the second based upon a common-law claim of negligence.  The same complaint embraces two causes of action against the architects, one resting upon a claim of negligence in design and supervision, and the other based

upon an alleged failure to provide adequate insurance for the protection of the housing authority in accordance with a written agreement. Motions were made to dismiss all of the complaints, except that of the infant plaintiff against the housing authority, under rule 106 of the Rules of Civil Practice, on the ground that they did not state facts sufficient to constitute causes of action.

The Special Term dismissed the complaint of the infant plaintiff against the builder and architects. It also dismissed the second cause of action, based on negligence alone, in the third-party complaint against the builder, but refused to dismiss the first cause of action alleged therein against the builder resting on an indemnification agreement. So far as the third-party complaint against the architects is concerned the Special Term dismissed the first cause of action based on negligence but refused to dismiss the second cause of action which rested on a claim of failure to provide and maintain adequate insurance. The appeals before us are from the orders and judgments entered upon such decisions.

We take up first the complaint of the infant plaintiff against the builder and architects. This complaint was dismissed because the Special Term felt that the case of *Secor* v. *Levine* (271 App. Div. 893, affd. 296 N. Y. 1020) was decisive as a matter of law. We reach a different conclusion. In the *Secor* case the complaint alleged that the defendant contractor negligently constructed a roof and gutters so that snow water and rain water ran on to the steps of the building. The water thereafter froze, causing an icy condition and injury to one of the owner's tenants. Thus in that case there was an intervening cause for which the contractor could not be held liable after the acceptance of the work because it lay easily in the power of the owner to remove the ice or to take other steps to render it harmless, acts which the contractor could not do and which he had a right to assume that the owner would perform if the necessity arose.

Plainly the case here is different. Here the architects are charged with designing a dangerously defective porch and the builder with erecting it. Clearly, if the allegations against the architects are taken at their face value, as we must do at this stage of the case, they cannot escape liability unless the lack of privity between them and the infant plaintiff exonerates them as a matter of law. It could hardly be assumed that the architects could rely upon a belief that the owner would reconstruct the porch or otherwise remedy a dangerous condition which they had designed. True, an owner may sell or lease a tumbledown house with impunity, providing that it is not to be used imme-

diately as a place of public entertainment (Bohlen, The Basis of Affirmative Obligations in the Law of Tort, 44 Am. L. Reg. [N. S.] 276), but the principle of nonliability to third parties flowing from that situation has no application here.

The doctrine announced in the case of *MacPherson* v. *Buick Motor Co.* (217 N. Y. 382) is pressed upon us. We recognize that if the complaint of the infant against the architects and builder in this case is held to state a good cause of action we are in effect extending the doctrine of the *MacPherson* case, which dealt only with personal property, to structures erected upon real property. So far as we can discover no case in this jurisdiction has quite gone that far, although several exceptions have been made to the old doctrine of lack of privity as exemplified in the case of *Mayor of City of Albany* v. *Cunliff* (2 N. Y. 165), nevertheless we can see no valid reason for a distinction between real and personal property so far as the principle of liability is concerned. Indeed the arguments for and against liability are almost precisely the same in each instance. The trend of modern legal scholarship appears to sustain the view that no cogent reason exists for continuing the distinction (Prosser on Torts [2d ed.], pp. 517–518; Restatement, Torts, §§ 385, 395).

Long before the *MacPherson* case was decided it was held in a case, which we regard as of great significance, that a contractor who built a defective moveable scaffold was liable to third persons with whom he had no privity (*Devlin* v. *Smith,* 89 N. Y. 470). It was sufficient that he knew the scaffold was to be used by workmen of another. The scaffold was not an inherently destructive instrument and became so only when imperfectly constructed. Although it was merely a chattel it was nevertheless used in a building operation, and the analogy between that situation and the porch involved in this complaint appears striking to us. True, a porch ordinarily is not as dangerous to use as a scaffold, but it may be dangerous if improperly designed and constructed. The difference is merely one of degree so far as danger is concerned, and we can see no logic in the assertion that because one is affixed to real estate and the other is a moveable chattel that there must be a difference in principle so far as liability to third persons is concerned. We think the common viewpoint is that such a distinction has become outmoded in our complex and highly industrialized society. The imminence of danger should be the test and not the classification of the object from which the danger emanates.

The builder is in a somewhat different position than the architects. He is justified in relying on plans and specifications

which he has contracted to follow unless they are so apparently defective that a builder of ordinary prudence would be put on notice that to follow them would create a dangerous situation (*Ryan* v. *Feeney & Sheehan Bldg. Co.*, 239 N. Y. 43). The application of this rule frequently runs into the path of fact and cannot ordinarily be disposed of as a matter of law. Such is the situation here.

It is alleged in the complaint we are discussing that the porch was so improperly designed and constructed that it was dangerous to use. It is also alleged that both the architects and the builder knew that it was to be used by both adults and children. In view of what we have heretofore said we think this complaint states a good cause of action in spite of lack of privity, and that it was error to dismiss it as a matter of law.

So far as the third-party complaint by the authority is concerned we think the Special Term was correct in refusing to dismiss the first cause of action against the builder, and erred in dismissing the second cause of action alleged.

The first cause of action is based upon an indemnification agreement between the builder and the authority, appended in part to the complaint, which contained these clauses: " 1. The Contractor shall be the insurer of the Authority, its members, officers, agents and employees, and hold them harmless against the following distinct and several risks, * * * excepting only those risks which result solely from affirmative, wilful acts done by the Authority subsequent to the acceptance of the Contractor's Proposal: * * * (b) The risk of causing injuries to persons, wrongful death, and property damages, direct or consequential, to the Authority, its members, officers, agents and employees, arising out of or in connection with the performance of the Work, whether sustained before or after Final Payment. * * * (c) The risk of liability or losses suffered by, or claims and demands, just or unjust made by, third persons, whether made before or after Final Payment, against the Authority, the members thereof, its officers, agents and employees, arising or alleged to arise out of the performance of the Work, on account of bodily injuries or death or property damage suffered or alleged to have been suffered."

The language of these clauses appears to us to be somewhat ambiguous and hence the intent of the parties cannot be disposed of summarily on the pleading. Whether the builder's promise to indemnify was limited to only those injuries arising during the performance of the work may become a question of fact; at least we cannot say whether facts and circumstances developed on the trial may not have an important effect in construing

the indemnification agreement. Hence, we think the Special Term was correct in refusing to dismiss the third-party complaint so far as this particular cause of action is concerned.

The second cause of action over against the builder on allegations of common-law negligence was dismissed, apparently on the theory that the builder and the authority were joint tortfeasors as a matter of law (*Fox* v. *Western New York Motor Lines,* 257 N. Y. 305; *Secor* v. *Levine,* 271 App. Div. 893, affd. 296 N. Y. 1020, *supra*). It was error we believe to dismiss this cause on such a theory. The cases cited to support it are clearly distinguishable on the facts. While it is true that the authority had a duty, so far as the tenants were concerned, to see to it that the premises it held out for rental were reasonably safe for occupancy, but as between itself, the builder and the architects, it was entitled to rely upon the latter to discharge their duties properly because of the contractual relations it had with them. It could only be deprived of its right to indemnity, in case it was held to liability for their wrong doing, by proof that it did in fact act affirmatively, beyond a mere omission, in creating a dangerous situation (*Phoenix Bridge Co.* v. *Creem,* 102 App. Div. 354, affd. 185 N. Y. 580; *Schwartz* v. *Merola Bros.,* 290 N. Y. 145; *Wanamaker* v. *Otis Elevator Co.,* 226 N. Y. 192). It cannot be properly said on the present state of the pleadings that the authority was guilty of more than passive negligence, although that proposition may well become an issue of fact. There are cases where it is very difficult to determine the line between passive and active negligence, but it certainly would seem contrary to common sense to say in this case on the pleadings alone that the builder and architects can escape the consequence of their negligence on the theory that because the owner accepted the work, it became a joint tort-feasor.

Of course, if it appears on the trial that the authority knew of a dangerous condition and acquiesced in the maintenance thereof, then it cannot justly claim to have been merely passive. In that case its failure to act took on the nature of affirmative negligence and it became *in pari delicto* and a joint tort-feasor (*Ruping* v. *Great Atlantic & Pacific Tea Co.,* 283 App. Div. 204). What has been said about the builder applies with equal if not greater force against the architects and the first cause of action over against them which the Special Term also dismissed.

The second cause of action against the architects, which the Special Term has sustained, is based upon allegations to the effect that the architects failed to provide and maintain adequate insurance to protect the authority against personal injury claims. There was a written agreement between the authority

and the architects which provided in part as follows: " ARTICLE XI. Insurance *Insurance*. 1. The Architect shall maintain such insurance as will protect him and the Authority from \* \* \* any \* \* \* claims for damages or personal injury \* \* \* which may arise from work done under this agreement, whether such work be done by the Architect, his servants, agents or employees or by independent contractors engaged by the Architect."

We think the purport of this agreement for the maintenance of insurance was limited to the time when the work was being performed. The authority in this cause of action has not called our attention to any standard form of insurance relative to such a situation against claims arising after the work has been accepted, for an indefinite period, nor has it alleged that the agreement was to provide some special form of insurance not customarily used. It may also be pointed out that the case is entirely different than the case against the builder upon an indemnification agreement. We think, therefore, that the Special Term was in error in refusing to dismiss this cause of action.

The order to dismiss the complaint of the infant plaintiff against the builder and the architects should be reversed on the law, with $10 costs, and the motion to dismiss denied.

The order, or that part thereof, which dismissed the second alleged cause of action in the third-party complaint against the builder should be reversed on the law, with $10 costs, and the motion to dismiss denied. The order, or that part thereof, which denied the motion to dismiss the first cause of action in the third-party complaint against the builder should be affirmed.

The order, or that part thereof, which dismissed the first alleged cause of action in the third-party complaint against the architects should be reversed, with $10 costs, and the motion to dismiss denied. The order, or that part thereof, which denied the motion to dismiss the second alleged cause of action in the third-party complaint against the architects should be reversed, with $10 costs, and the motion to dismiss granted.

BERGAN, COON, HALPERN and GIBSON, JJ., concur.

Order dismissing the complaint of the infant plaintiff, and his father, against the builder and architects reversed, on the law, with $10 costs, and the motion to dismiss denied.

The order, or that part thereof, which dismissed the second alleged cause of action in the third-party complaint against the builder reversed, on the law, with $10 costs, and the motion to dismiss denied. The order, or that part thereof, which denied the motion to dismiss the first alleged cause of action in the third-party complaint against the builder affirmed.

The order, or that part thereof, which dismissed the first alleged cause of action in the third-party complaint against the architects reversed, on the law, with $10 costs, and the motion to dismiss denied. The order, or that part thereof, which denied the motion to dismiss the second alleged cause of action in the third-party complaint against the architects reversed, on the law, with $10 costs, and the motion to dismiss granted.

Settle order.