[L. A. No. 24695. In Bank. Feb. 18, 1958.]

LEONA FAYE DOW et al., Respondents, v. HOLLY MANU-
FACTURING COMPANY (a Corporation) et al., De-
fendants; GEORGE W. BLEDSOE, Appellant.

Gray, Cary, Ames & Frye and J. Sterling Hutcheson for Appellant.

McInnis, Hamilton & Fitzgerald and John W. McInnis for Respondents.

CARTER, J.—Plaintiff Leona Faye Dow is the widow of Howard Dow and the mother of Patricia and Arthur Dow. Plaintiff, Richard Dow, is the son of Howard Dow and brother of Patricia and Arthur. Plaintiffs were awarded damages against defendant Bledsoe for the wrongful deaths of Howard, Patricia and Arthur. The case was tried before a jury and no verdict was rendered with respect to defendant Holly Manufacturing Company. Defendant Bledsoe, hereinafter referred to as defendant, appeals from the judgment.

The deaths were caused by asphyxiation from carbon monoxide coming from a gas heater in the home of the Dow family. Dover, a plumbing contractor who installed the heater, was not a party to the action.

The home was built by defendant Bledsoe, as general contractor, for Mr. Muth between September, 1950 and February, 1951; defendant also prepared the plans and specifications. Mr. Muth was the then owner of the property. Muth never occupied the house. He sold it to Mr. and Mrs. Petty in April, 1951; they occupied the house until they sold it to the Dows in 1953. Plaintiff, Mrs. Dow, left her home with one son, Richard, the other plaintiff, for a visit in the middle west on January 15, 1954. They returned on January 26 at 8 p. m. and found the doors and windows closed, the hall gas heater on and Mr. Dow and the two children dead from asphyxiation.

The plans and specifications provided for the installation in the walls of the house of two 25,000 B.T.U. gas heaters, one in the living room, thermostatically controlled, and the other in the hall, manually controlled. Defendant contracted with Dover, a licensed plumbing contractor, to install the heaters.* Dover bought two heaters from the Holly Manufacturing Company and had his employees install them in the walls. He also installed, immediately above the hall heater, a "secondary heat exchanger," which was also installed in the wall above the top of the heater and below the ceiling and around

---

*There is a dispute as to whether Dover was an independent subcontractor, defendant claiming he was as a matter of law; more will be said of that later.

the vent which extended upward to the roof, and a grill was placed in the wall just below the ceiling to admit heat into the room. Heat and the products of combustion arose through the vents from the heaters. Defendant saw the secondary heat exchanger when the wall studding was still uncovered. The heaters themselves were installed when the house was nearly completed. The city building inspectors also saw the "secondary heat exchanger" and made no complaint to defendant. Defendant examined the heaters to see if the American Gas Association seal was on them.

It appears that above the burner there is a heat exchanger which is a metal box concealed by panels on the front of the heater. The flue to the roof (heater vent) goes from that exchanger to the roof. There is a grill at the top of the panel from which heat flows, the air being heated because the box or exchanger is heated. Dover also put a grill in the wall near the ceiling above the heater, giving access to the area around the flue which is heated by reason of the flue passing through it. That is referred to as a "secondary heat exchanger."

There is evidence that after the deaths the hall heater, including the flue, were heavily sooted, cutting down the area for the outflow through the flue; that the flame was yellow instead of blue as it should have been, which meant an overfiring (too much gas coming into the burner) and the impairment of passage by the soot; that there was soot on the grill near the ceiling and on the wall and ceiling; that the heater had been changed to accommodate the secondary heat exchanger and had the wrong burner for it; that the orifices which admitted the gas for burning were too large, being proper for a 35,000 rather than a 25,000 B.T.U. heater; that the heater was a 25,000 B.T.U. design; that as a result of the larger orifices sooting would occur, which, over a period of time, would result in carbon monoxide entering the house from the heater; that carbon monoxide is a colorless and odorless gas, and it was coming from the heater in large quantities when tested after the deaths; that the effect of installing a secondary heat exchanger on a heater like the hall heater would be that the heater would be only partially vented, and a substantial portion of the products of combustion would spill out of the relief opening in the draft head; that one could not install a secondary heat exchanger on the hall heater without altering the appliance; that the use of a secondary heat exchanger with the hall heater would cause flue products to

spill out of the relief opening in the draft head; that products of combustion would come into the room because of poorly constructed vent features; that because the hall heater was not adapted to a secondary heat exchanger it was not good practice to use one and would be more of a hazard if the heater were overfired. While there is some inconsistency within the testimony of some of plaintiffs' witnesses and there is otherwise a conflict in the evidence, those were matters for resolution by the finder of fact, the jury here. The evidence is thus sufficient to show the installation of a defective heater, which clearly constituted negligence. Whether that negligence was on the part of Dover or defendant is unimportant for the reasons hereinafter appearing.

It should first be observed that the owner for whom the house was built by defendant general contractor had accepted the house and it had been transferred by him, with title finally vesting in the Dows. At one time this was an obstacle to recovery from the general contractor on the theory that there was no privity of contract between the contractor and the person injured, but it is no longer the law, as obviously, the problem presented is the same as where a manufacturer negligently manufactures an article which subsequently injures someone other than the purchaser of the article. (See famous case of *MacPherson* v. *Buick Motor Co.*, 217 N.Y. 382 [111 N.E. 1050, Ann.Cas. 1916C 440, L.R.A. 1916F 696].) Commenting on this subject a well-known text writer states: ''Where the defendant has in fact misperformed his contract, and is to be charged with 'misfeasance' resulting in injury to a third person, it is to be expected that liability to third persons will be found more readily; and in general this has been true. Even here, however, the great obstacle has been the notion of the necessity of 'privity of contract' inherited from the misinterpretation of *Winterbottom* v. *Wright*. . . . All this is now ancient history. The analogy of the seller has prevailed, and the late decisions are agreed that the man who negligently repairs a vehicle or any other chattel is liable to others who may be injured because of that negligence, to the same extent as if he had made and sold the chattel in the first instance.'' (Prosser on Torts, (2d ed.) p. 517.) And with respect to building contractors: ''Until quite recent years it was the prevailing rule that the contractor would be liable for any injury resulting from his negligence before his work was completed, but that his responsibility was terminated and he was not liable to any third

person once the structure was completed and accepted by the owner. . . .

"The present state of the law is not altogether clear because of the survival of so many of these exceptions, which afford an opportunity to hold the defendant liable without stating any general rule. It appears, however, that the analogy of *MacPherson* v. *Buick Motor Co.* is at last being accepted. Several recent decisions have placed building contractors on the same footing as sellers of goods, and have held them to the general standard of reasonable care for the protection of anyone who may foreseeably be endangered by the negligence, even after acceptance of the work." (Prosser on Torts, (2d ed.) p. 517.) (See also *Hale* v. *Depaoli*, 33 Cal.2d 228 [201 P.2d 1, 13 A.L.R.2d 183]; *Moran* v. *Pittsburgh-Des Moines Steel Co.*, 166 F.2d 908; *Hunter* v. *Quality Homes*, 45 Del. 100 [68 A.2d 620]; *Colton* v. *Foulkes*, 259 Wis. 142 [47 N.W. 2d 901]; *Colbert* v. *Holland Furnace Co.*, 333 Ill. 78 [164 N.E. 162, 60 A.L.R. 353]; *Wright* v. *Holland Furnace Co.*, 186 Minn. 265 [243 N.W. 387]; Rest., Torts, § 385; cases collected 42 Va.L.Rev. 403; 13 A.L.R.2d 191.)

Turning to the question of whether the general contractor was liable for the negligent installation of a defective gas heater by Dover, his subcontractor, which brought death to plaintiff's husband and children, there are analogous situations pointing to liability.

It has been held that the *owner* of property cannot escape liability for a dangerous condition on his property by having an independent contractor assume the duty of constructing or repairing a building or chattel. (*Knell* v. *Morris*, 39 Cal.2d 450 [247 P.2d 352]; *Brown* v. *George Pepperdine Foundation*, 23 Cal.2d 256 [143 P.2d 929]; *Snyder* v. *Southern Calif. Edison Co.*, 44 Cal.2d 793 [285 P.2d 912].)

There is no reasonable distinction between the owner's inability to escape liability and that of the contractor. The contractor, equally with the owner of the property, has supervision over the entire building and its construction, including the work performed by a subcontractor, and where he negligently creates a condition, either by himself or through a subcontractor, he is primarily responsible for that condition and the consequences that may follow from it. He is in full control of the construction and knows or should know what is being placed in the building. Indeed, what is placed there is peculiarly within his knowledge, and where, as here, it involves a defective appliance which is covered and hidden by the walls

in the course of construction, the responsibility for such defect should rest upon him as well as on the subcontractor.

There is also a close analogy between a supplier of chattels and a general contractor for the construction of a building. The contractor supplies all of the materials used as well as the labor either by fabricating it himself, buying it from another or having an independent subcontractor do the same thing. The owner in effect buys a properly completed building from the contractor which the contractor is bound to supply. █ In the case of the supplier of chattels when he supplies the goods it is immaterial to his liability that he may have had another supply the product; he is nevertheless liable because he has vouched for the chattels as his own by taking the contract. █ The same is true of a house where he supplies many parts, as well as labor, most of which are probably not fabricated by him but by independent contractors or sellers. In such case the supplier is liable to third persons for negligence. (See *Slavin* v. *Francis H. Leggett & Co.*, 114 N.J.L. 421 [177 A. 120], affirmed 117 N.J.L. 101 [186 A. 832]; *Thornhill* v. *Carpenter-Morton Co.*, 220 Mass. 593 [108 N.E. 474]; *Swift & Co.* v. *Hawkins*, 171 Miss. 253 [164 So. 231]; *Moran* v. *Pittsburgh-Des Moines Steel Co., supra*, 166 F.2d 908; *Hunter* v. *Quality Homes*, 45 Del. 100 [68 A.2d 620]; *Colton* v. *Foulkes*, 259 Wis. 142 [47 N.W.2d 901]; *McCloud* v. *Leavitt Corporation*, 79 F.Supp. 286; *Inman* v. *Binghampton Housing Authority*, 1 App.Div. 559 [152 N.Y.S.2d 79]; Rest. Torts, §§ 385, 400.) The following comment is here pertinent: "In specifically rejecting the *Ford* v. *Sturgis* [14 F.2d 253 (56 App.D.C. 361, 52 A.L.R. 619)] rule insofar as it is contrary to the present holding [*Hanna* v. *Fletcher*, 231 F.2d 469 (97 App.D.C 310)], the court has demolished one of the few remnants of the classic privity-of-contract doctrine which insulated builders and manufacturers from liability to ultimate users and consumers Both the majority and the minority found no difficulty in applying the *McPherson* rule to building contractors, and their only disagreement seems to be on the facts of this particular case. Thus, building contractors will be treated like all other independent contractors, manufacturers, and vendors in regard to negligently manufactured products which cause injuries to persons not in privity of contract. It seems perfectly logical not to differentiate between the two classes of contractors. Historically the same rules of law have usually applied to both. The good sense of the *McPherson* liability rule has been so widely praised and

is so well accepted that it has become a substitute for the 'general rule' of nonliability, rather than an exception. Regardless of the facts of the instant case, this notion is desirable from a social policy point of view and deserves the widespread application which it is receiving.'' (42 Va.L.Rev. 403, 405.) There is also an analogy in the rule stated in the Restatement. ■ ''One who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer.'' (Rest., Torts, § 400.) ■ While ordinarily that may refer to goods sold under a trade name, there is no substantial difference between that situation and a contractor who puts out a completed house including gas heaters which appear as his product; moreover, the defendant here prepared the plans and specifications for the house. Surely there is no valid distinction between a general contractor constructing a building and using subcontractors to install equipment therein, and the manufacturer of an automobile buying parts not fabricated by it to install in the car, and selling the assembled car. There should be liability in both cases. ■ Moreover, it should be observed that the general contractor had the duty to inspect appliances installed in the building and should have inspected the installation of the defective heater here. He had general control over all his subcontractors and their works. Although there is evidence that he made such an inspection, the jury could have disbelieved him or have found that it was not a sufficient inspection.

■ It should be remembered that ''One who . . . installs a dangerous instrumentality, of which a gas heater is an example, is in such installation charged by law (1) with knowledge of the particular dangers characteristic of the instrumentality and of the manner and means by which the danger or dangers are likely to eventuate into actual harm, and (2) with the duty to use that degree of care which is commensurate with the danger, to guard or insulate against it. Such a rule has its roots in an impelling necessity in the promotion of the safety and security of life and property—it has its foundation in the essence of the social compact.'' (*American Heating & Plumbing Co.* v. *Grimes,* 192 Miss. 125 [4 So.2d 890, 891]; see *Gobrecht* v. *Beckwith,* 82 N.H. 415 [135 A. 20, 52 A.L.R. 858].) Gas heaters have the inherent capacity for great harm unless they are properly made and installed, especially since their defects are usually concealed

from the occupant of the building and the deadly gas, carbon monoxide, gives no warning of its presence. They may be compared to the gas they burn which is inherently dangerous and the duty with respect to which cannot be delegated (see *Ambriz* v. *Petrolane, Ltd., ante,* p. 470 [319 P.2d 1]) for they are the instrumentalities which use and should control and make safe the use of the gas. Since the liability of defendant Bledsoe was established by proof of the fact that a defective heater was installed in the house by Dover, which was the proximate cause of the deaths of plaintiff's husband and children, it is immaterial whether Dover was an employee of Bledsoe or an independent contractor. It was defendant's responsibility to construct a house equipped with an adequate heating system and he could not negate that responsibility by delegating to Dover, even as a subcontractor, the work of installing the necessary equipment for said heating system. It is obvious that if he had discovered the defect in the heater installed by Dover, he would have required Dover to correct the defect or replace the heater. The fact that he did not discover the defect does not relieve him of liability, as it was a question of fact for the jury as to whether he was negligent in permitting the house to be occupied with the defective heater which caused the deaths for which recovery was allowed.

Defendant complains of a jury instruction which stated that there was a presumption that Dover was an employee of defendant when he was an independent contractor as a matter of law and of the exclusion of evidence bearing on the nature of their relation to each other. In view of the result we have reached herein those matters are immaterial and defendant was not prejudiced.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Traynor, J., and Spence, J., concurred.

Schauer, J., concurred in the judgment.

McComb, J., dissented.