EPHRAIM FINE v. THE MAYOR AND COUNCIL OF WILMINGTON, a corporation of the State of Delaware.

(*January* 14, 1953.)

CAREY, J., sitting.

*Stewart Lynch* and *Florence E. Freeman* for plaintiff.

*Herbert B. Warburton* for defendant.

Superior Court for New Castle County, No. 465, Civil Action, 1951.

CAREY, J.:

Defendant's brief raises six questions which may be concisely stated in this manner: (1) Is the supplying of water to a consumer a governmental, or a corporate, function? (2) Was there a duty of inspection owed by defendant to plaintiff? (3) Is defendant responsible to plaintiff for acts or omissions of the Board of Water Commissioners or of the employees of that Board? (4) Does the doctrine of *res ipsa loquitur* apply to this case? (5) May this plaintiff sue in contract for breach of a warranty when he was not a party to the contract? (6) Is water passing through a meter and pipes in a consumer's cellar under high pressure, such a dangerous instrumentality as will impose an absolute liability in the event of damages caused by its escape?

Defendant's first contention is directed to all four counts. It is that the operation of a waterworks system is a governmental function. This statement may or may not be true as to such an operation for the purpose of fire protection and certain other public purposes. It is not true, however, as to the distribution of water for private uses of inhabitants of the municipality. This is the rule which has been followed in almost every reported case. 56 *Am. Jur.* 935, 18 *McQuillan, Municipal Corporations* (3d ed.) 423. The only exception cited in the briefs is *Patterson v. Little Rock*, 202 *Ark.* 189, 149 *S. W.* 2d 562. The majority rule is the more reasonable one, in my opinion, and will be accepted as the law of this State. I hold that the supply-

ing of water to this plaintiff was an exercise of a corporate function. For this reason, *Kelley v. City of Wilmington*, 5 *W. W. Harr*. 9, 156 *A*. 867, has no application here.

Defendant's next contention is directed to the first count of the complaint. This count charges negligence in four particulars: (a) failure of defendant to inspect the meter before installing it; (b) failure of defendant at the time of its installation to determine its adequacy to hold and control water; (c) failure of defendant to inspect the meter after installation from time to time to determine its continued ability to hold and control the water; (d) knowingly subjecting the meter to water pressures in excess of the manufacturer's fixed limit. Defendant attacks this count on the ground that it shows no duty owed by defendant to plaintiff, that is, that there was no duty on defendant's part to inspect the meter before or after installation, nor did any such duty arise until the condition which produced the damage had actually been called to defendant's attention or had existed for such a period of time as to constitute constructive notice. For the purpose of considering this contention under the present motion to dismiss, the allegations of fact in the complaint must be viewed in the light most favorable to plaintiff.

According to these averments, the defendant through its "Water Department" operates a water system serving residents of the City, as well as residents of certain suburban areas, including a subdivision known as "Deerhurst". In January, 1946, defendant purchased a water meter from a manufacturer and installed it in the property now owned and occupied by the plaintiff in Deerhurst. The installation was completed in November 1946. On December 3, 1950, the meter "broke", "cracked", "burst" or "shattered", causing water to leak into the premises in large quantities, thereby damaging certain merchandise and equipment therein. The defendant, ever since the meter was installed, has had exclusive possession and control of the meter, the water passing through it and the pressures of that water.

I do not understand the present contention to be directed at the fourth specification of negligence; obviously, the

existence or non-existence of a duty to inspect has nothing to do with the duty to refrain from knowingly subjecting the meter to pressures in excess of its capacity. As to the first three specifications of negligence, it is difficult to see how the Court, at the present stage of this case, can determine the precise duty of care owed by the defendant. Certainly, it cannot *now* say that *no* duty of inspection existed. The writer makes no pretense to any knowledge of the customs and practices of ordinarily prudent and careful installers-of-water-meters. It may be common practice for them to examine meters minutely before installation and to test them thoroughly after installation. It may be that such installation and/or test would have disclosed the very defect, if any, which caused this particular meter to burst. Again, it may be common practice for water suppliers to inspect meters "exclusively controlled" by them at periodic intervals, and that such inspection would have brought to light the flaw, if any, in this meter. Determination of these matters must await introduction of evidence into the record.

■ Defendant's third contention is that the City is not responsible for negligent acts of the Board of Water Commissioners or its employees, that Board having been created directly by the Legislature. The argument here is that the Board is completely beyond the control of the city corporation, and that the doctrine of respondeat superior has no application in this case.

The statute by which the Board was created, Vol. 17, *Laws of Delaware*, 408, as amended, was quoted and discussed at great length in *Weldin v. Wilmington*, 3 *Penn*. 472, 51 *A*. 157, and it is now necessary only to summarize a few of its provisions. At the very beginning appears these words "The City of Wilmington is hereby authorized, through the agency of a Board of Water Commissioners hereby created" to operate a water system. Similar phraseology is used in certain amendatory acts in conferring additional powers upon the Board. The members of the Board are appointed by the Mayor of the City. It is given the exclusive right to employ servants and to make regulations for the operation of the water system. Its bills are subject

to examination by the City Auditor and its warrants for payment thereof must be countersigned by the City Treasurer and City Auditor. All real estate and other property purchased by it becomes vested in the Mayor and Council of Wilmington, the municipal corporation. Its surplus revenues are paid over monthly to the City Treasurer for the general use of the City.

Nothing in the Act, or the amendments thereto, makes the Board an independent corporation or legal entity separate and distinct from the municipal corporation. On the contrary, it is an agency of the City, charged with the exclusive administration of this single function of the municipality. Its activities are, for the most part, free of any control by the City Council but this fact is of no consequence here. The mere fact that a given function is performed by one agency rather than another does not relieve the corporation itself of its responsibilities under the doctrine of respondeat superior. The *Weldin* case, *supra,* contains nothing inconsistent with the conclusion. *City of Louisville v. Frank's Guardian,* 154 *Ky.* 254, 157 *S. W.* 24, cited by defendant, is not in point for the Board there involved was a distinct and independent corporation; obviously, respondeat superior could have no application in such a situation. The organizational scheme presented by the present case is almost identical with those described in *Lockwood v. Dover,* 73 *N. H.* 209, 61 *A.* 32, *Pearl v. Revere,* 219 *Mass.* 604, 107 *N. E.* 417, and *Pettingill v. Yonkers,* 116 *N. Y.* 558, 22 *N. E.* 1095. In each of them the City was held responsible. This contention must be resolved against the defendant.

The second count of the complaint, relying upon the rule of *res ipsa loquitur,* charges negligence in respects unknown to plaintiff because the meter was in the sole control, direction and management of the defendant. In attacking this count, defendant denies that the meter was under its sole control. The only averment now in the record relied upon to refute the allegation of sole control is that the meter was located on plaintiff's premises. While this fact alone is suggestive of lack of defendant's sole control, it is not necessarily inconsistent therewith.

Notwithstanding its location on plaintiff's own property, circumstances may be reasonably conceived which might justify the application of the *res ipsa* doctrine. At the present stage of this case, therefore, the record does not justify dismissal of the second count. *Cf. Klein v. Sunbeam Corp.*, 8 *Terry* 575, 94 *A.* 2d 385.

The third count is attacked on the ground that there was no privity of contract between the plaintiff and the defendant. The plaintiff answers this by saying that he is a third party beneficiary and that, even if he were not, defendant is still liable to him under the imminently dangerous instrumentality theory, citing *Hartford Acc. & Indem. Co. v. Anchor Hocking Glass Co.*, 5 *Terry* 39, 55 *A.* 2d 148. The count is based upon the contract for the original installation; it was an agreement between the defendant and third persons, who erected and owned the building and later conveyed it to the plaintiff. It is not clear whether this contract was written or oral. In any event, a copy of it is not in the record, nor is it suggested that it directly or indirectly named plaintiff as a beneficiary. Nothing now before the Court suggests that plaintiff was more than a mere incidental beneficiary, at most. As such he may not bring suit upon that contract. 2 *Williston on Contracts*, Sec. 402. Nor may this contract count for breach of warranty be supported under the dangerous instrumentality theory, for liability under that doctrine is grounded upon negligence and is enforceable in tort rather than in contract. *Gorman v. Murphy Diesel Corp.*, 3 *Terry* 149, 29 *A.* 2d 145; *Hunter v. Quality Homes*, 6 *Terry* 100, 68 *A.* 2d 620; *Barni v. Kutner*, 6 *Terry* 550, 76 *A.* 2d 801. The defendant's motion must be granted as to this count.

The final count must also be dismissed. No authorities have come to my attention holding a water supplier liable without fault in circumstances like those of this case. Those conditions which give rise to an absolute liability simply do not exist. *Restatement, Torts*, Sec. 520; 38 *Am. Jur.* 742.

An order should be submitted in accordance herewith.