CATHOLIC WELFARE GUILD, INC., a Delaware Corporation, Plaintiff, v. BRODNEY CORP., a Delaware Corporation and TURNER CONSTRUCTION COMPANY, A New York Corporation, Defendants.

(*April* 22, 1964)

LYNCH, J. sitting.

*Frank O'Donnell,* for plaintiff.

*William Prickett, Jr.,* for defendants.

Superior Court of Delaware, for New Castle County, No. 1177 Civil Action, 1962.

LYNCH, Judge.

This memorandum is intended to dispose of a contention, advanced by plaintiff in the second count of its complaint that defendants are liable, under the doctrine of strict liability, for property da⸱ʾage allegedly sustained by plaintiff corporation to its property located in the city of Wilmington across the street form property of defendant Brodney Corporation, resulting from blasting operations conducted by defendants.

During the course of construction of a building for defendant Bordney Corporation it was found necessary to blast rock, which had to be removed to construct the foundation.

Plaintiff claims the blasting operations caused vibrations and as a consequence plaintiff's property was allegedly damaged. It invokes doctrine of strict liability.

The doctrine of strict liability probably had its origin in our law in the English case of *Rylands v. Fletcher,* (1866) L.R. 1 Ex. 265, affirmed by the House of Lords (1868) L.R. 3 H.L. 330, although discussion by Dean Prosser at pages 315-318 of his work, Law of Torts, suggests other theories and philosophies underlying the basis of liability for so-called "wrongs" · or "torts" where there is a factor "ultra hazardousness" ·in carrying on a business operation. He points out at pages 317-318:

"* * * , the twentieth century has witnessed the overthrow of the doctirne of 'no liability without fault,' even in the legal sense of a departure from reasonable standards of conduct; and a general acceptance of the principle that in some cases the defendant may be liable, although he is not only charged with no moral wrongdoing, but has not even departed in any way from a reasonable standard of intent or care. In some instances, * * * involving unusual conditions or

activities the courts have in effect recognized a new doctrine, that the defendant's enterprise, while it will be tolerated by the law, must pay its way. There is 'a strong and growing tendency, where there is blame on neither side, to ask, in view of the exigencies of social justice, who can best bear the loss and hence to shift the loss by creating liability where there has been no fauult.' * *

"This new policy frequently has found expression where the defendant's activity is unusual in the community, and the danger which it threatens to others is unusually great and will be great even though the enterprise is conducted with every possible precaution. The basis of the liability is the intentional behavior in exposing the community to such a risk. The conduct which is dealt with here occupies comething of a middle ground; it is conduct which does not so far depart from social standards as to fall within the traditional boundries of negligence, but which is still so far socially unreasonable that the defendant is not allowed to carry it on at the expense of actual damage to his neighbors."

It may be noted that the City of Wilmington, by an Ordinance[1] approved by the Mayor on January 25, 1940, passed an Ordinance prohibiting the use of "explosive materials without a permit in writing form the Bureau of Fire." Restrictions were provided for carrying out blasting operations. For instance, Section 25(b) provides:

"(b)   Any blasting contiguous to or near any structure must be so conducted as not to cause damage to such structure, and to this end weak walls or other supports must be shored up and other measures taken to prevent damage. When blasting in the vicinity of a weak structure is unavoidable only light blasts with short lines of resistance and small charges shall be used."

Then Section 33 provides, among other things:

"* * * Every applicant for a permit shall file with the Clerk of 'The Council' a policy or certificate of insurance evidencing that such applicant is insured by an insurance company qualified to do business

---

[1] See 35 C.J.S. Explosives Secs. 2 and 3.

in the State of Delaware and signed and countersigned within the State against injuries or damages resulting from any blasting in a sum not less than $300,000; provided, however, that if it appears to the said Clerk that the hazards involved in blasting at the site described in the application shall exceed the said sum of $300,000, then and in that event, the said Clerk shall have full power and discretion to require the applicant to have insurance coverage in the amount fixed and determined by the said Clerk before the permit be granted. "

It would thus appear that one who carries on blasting procedures in the City of Wilmington is liable under principles of insurance or indemnification, and is not relegated to the usual principles of liability in order to recover.

This Court in *Fritz v. E. I. Du Pont DeNemours & Co.,* 6 Terry 427, 75 A.2d 256 (Super. Ct.) declined to apply the doctrine of strict liability in a case involving the escape of chlorine gas, used by a manufacturer in a manufacturing process. Defendant cites the Fritz case as precedent for this Court to reject the doctrine of strict liability where a party uses explosives in blasting. I do not see the relevancy of the Fritz case to the situation here involved; it is highly questionable that this case should be decided by what was decided in the Fritz case. That case arose in a rural area; the interests there involved cannot be likened to what is presented here.

Professor Prosser, in his work on torts, 2d Ed., pages 318, 331, 336 and 340, considers the doctrine of strict liability in blasting cases and would apply it. At page 336 this discussion may be found:

"Actually even the jurisdictions which reject *Rylands v. Flethcer* by name have accepted and applied the principle of the case under the cloak of various other theories. The courts are unanimous in holding that blasting, which is certainly the typical activity of this kind, results in strict liability without proof of negligence when rocks are thrown upon the plaintiff's land, so that a 'trespass' may be found, or where they strike his person. Where the damage is the result merely of concussion or vibration, some seven or eight courts continue to adhere

to the ancient distinction between trespass and case, and regard the injury as an 'indirect' one, for which there can be no recovery except on the basis of negligence. This distinction, which has often been denounced as a marriage of procedural technicality with scientific ignorance, is rejected by the great majority of the courts, which hold the defendant strictly liable for concussion damage. Many of the later cases have come to the conclusion that this strict liability is entirely a question of when and how, and that the use of explosives on an uninhabited mountainside is a matter of negligence only, but that any one who blasts in the center of a large city does so at his peril."

Plaintiff's property is located within the center of the City of Wilmington and this is a factor that must be considered.

Harper and James, in their work on the Law of Torts discuss the doctrine of strict liability in Secs. 14.6, 14.7 and 14.8.

Sections 519 and 520 of the Restatement of the Law of Torts provide for strict liability in a situation such as is here presented by the allegations of the complaint.

It is to be noted that Judge Stiftel in deciding *Vattilana v. George & Lynch, Inc.,* 2 Storey 168, 172, 154 A.2d 565 (Super. Ct. 1959) applied the doctrine of *res ipsa loquitur* to a blasting case. There the blasting took place in a then rural area and was done in the course of construction of "widening and constructing public roads." Judge Stiftel's language, 2 Storey at p. 172, 154 A.2d at p. 567 is worthy of close consideration. He stated:

"* * * the defendant was admittedly working on widening and constructing public roads. In the process of conducting its work, it was necessary to blast. It is claimed by plaintiffs that concussion caused damage to their property. The defendant had the management and control of the blasting operations. It knew how much explosive was being used and how and why it was being used. The burden of explanation should be on the defendant to show that the damage to the plaintiffs' property was not caused by blasting operations.

"* * *

"*Res ipsa loquitur* should be applied in this case since the damage alleged is unusual and such as would not normally occur if the user of the dangerous insturmentality had the required knowledge and if he had exercised the proper care. This type of damage suffered by plaintiffs does not generally happen except as a consequence of negligence.

"I conclude, therefore, that the doctrine of *res ipsa loquitur* is applicable in this case."

It is stated in 35 C.J.S. Explosives Sec. 8a, p. 275 that —

" * * * , one lawfully engaged in blasting operations is, according to the weight of authority, liable without regard to the question of whether or not he has been negligent, where by his acts in casting rocks or other debris on adjoining or neighboring premises or highways he causes direct damage to property or causes direct injury to persons thereon. He is also, under the rule more generally adopted, liable for consequential injuries accasioned by concussion or vibration to property or for consequential injuries occasioned by concussion or vibration to persons, without the actual casting of material; nor is the rule restricted in application to instances where the blasting is a nuisance per se or where the property is contiguous or adjoining."

From the records available to the Court in the Office of the Clerk of City Council and in the Office of the Fire Marshal, it would appear that the blasting here was done by an independent contractor. If that be the case and there are no provisions in the contract of the general contractor, some question may arise as to the liability of the landowner and/or of the general contractor. See 22 Am. Jur. Explosions and Explosives Sec. 55, p. 182.

As the Count appears in the complaint it seems sufficient and I decline to eliminate it which is what defendants seek.

An order may be presented in accordance with what is stated herein.