ETHEL DICKENS and ERNEST DICKENS, Plaintiffs, v. HORN & HARDART BAKING CO., a Pennsylvania corporation, Defendant.

(*February* 3, 1965)

STOREY, J. sitting.

*Wilfred J. Smith, Jr.,* for plaintiffs.

*E. N. Carpenter, II,* of Richards, Layton & Finger, for defendant.

Superior Court of Delaware for New Castle County, No. 506 Civil Action, 1962.

STOREY, Judge.

On April 10, 1961, plaintiffs, Ethel and Ernest Dickens, entered a restaurant operated by the defendant corporation in Wilmington, Delaware. After seating themselves at a table, plaintiffs ordered dinner from a waitress employed by the restaurant. In addition to the main course, Mrs. Dickens ordered and received a dish of coleslaw.

A visual inspection of the coleslaw revealed nothing unusual, and Mrs. Dickens began to eat the food without incident. While plaintiff was eating the coleslaw, she experienced a sudden pain in her upper right jaw, which subsequent investigation showed was attributable to a sliver of metal which had been concealed in the coleslaw.

Following first aid treatment at a local hospital, plaintiffs returned to their home, apparently believing the injury to be minor. On the next day, however, Mrs. Dickens experienced substantial pain and found it difficult to eat and to perform the duties of her employment. Accordingly, she contacted her family physician, who, in turn, referred her to a dentist and an oral surgeon. A tetanus injection and continuous consumption of antibiotics were prescribed as treatment, and X-ray examinations indicated that no pieces of the metal remained in plaintiff's body.

It appears from the testimony that the severe pain suffered by Mrs. Dickens subsided by the end of April, 1961, although apparently there was some minor residual pain. Unrebutted testimony by an oral surgeon who examined Mrs. Dickens at the request of defendant indicates that, at present, the area of the puncture wound is completely healed, without scarring, and there were no other objective signs of injury.

Both parties agree that Mrs. Dickens suffered no loss in wages or

employment opportunities as a result of the incident. Although treatment for the wound itself apparently terminated soon after the accident, there is substantial evidence that Mrs. Dickens has been under treatment for a nervous condition which was not present prior to the accident. Specifically, it appears that Mrs. Dickens is reluctant, since the incident, to eat in restaurants and is abnormally circumspect in her examination of food prior to eating. Mr. Dickens testified that the personality of his wife has changed substantially since the incident and that his wife has become nervous and irritable.

The complaint filed by plaintiffs is predicated upon allegations of express and implied warranty and upon an allegation of negligence by defendant. With respect to the allegation of express warranty, plaintiff concedes that the evidence provides no foundation for such a contention and agrees that it may be treated as abandoned. The allegation of an implied warranty presents a more substantial question. The Supreme Court of this State has never ruled upon the question of whether or not the owner of a restaurant impliedly warrants to his patrons that the food is merchantable and fit for human consumption. In *Roseberry v. Wachter*, 3 W. W. Harr. 253, 33 Del. 253, 138 A.273 (Del. Superior Court, 1925), the Court stated that a restaurant owner was not liable as an insurer, but only for the failure to use due care in the preparation and service of food.

This statement became the explicit holding of the Superior Court in *Pappa v. F. W. Woolworth Co.*, 3 Terry 358, 42 Del. 358, 33 A.2d 310 (1943), in which the Court held that Delaware would follow the then prevailing rule that the service of food in a restaurant does not constitute a sale of food, invoking the warranty provisions of the Sales Act. This holding was predicated upon the long-standing doctrine that a restaurant owner merely provides a license to eat food within his premises, and, therefore, the patrons acquire no right to consume the food outside such premises.

As noted above, the Court, in Pappa, adopted what it considered to be the majority rule prevailing in this nation. This rule, however, is

now clearly the minority view. See Annotation, Implied Warranty of Served Food, 7 A.L.R.2d 1027. In addition, the rule often leads to absurd and contradictory results. For example, if the restaurant in question also provides "take out" service, then entirely different rules of liability would apply to the service of the same food. See *Amdal v. F. W. Woolworth Co.,* 84 F. Supp. 657 (U.S.D.C.N.D. Iowa, 1949). In addition, those Courts which have adopted this minority rule have often developed artificial and distorted distinctions to avoid the application of such rule. For example, it has been held that the owner of a cafeteria is liable upon a theory of warranty while a restaurant owner is not, since, in the former case, the patrons have a right to remove the food from the premises. See *Sofman v. Denham Food Service, Inc.,* 37 N. J. 304, 181 A.2d 168 (1962). In any event, it is doubtful whether or not, as a practical matter, owners of restaurants refuse to allow their patrons to take home unconsumed portions of food.

While I recognize that the rule denying liability has been repudiated in a majority of sister jurisdictions and is factually indefensible, I am of the opinion that an overturning of the well settled rule now prevailing in this State should be done by either the Legislature or the Supreme Court. It is noted that the Uniform Commercial Code specifically repudiates the rule denying the existence of a warranty. See Section 2-314, U.C.C. The Uniform Commercial Code has not, however, been adopted by the General Assembly of this State. In view of the fact that I am of the opinion that plaintiff may prevail upon a theory of negligence, I decline, at this time, to refuse to follow the doctrine of the Court in *Pappa v. F. W. Woolworth Co.,* cited supra.

Plaintiff's theory of negligence is predicated upon the doctrine of res ipsa loquitur. If the facts of this case come within this doctrine, plaintiff is relieved from the requirement of showing the specific act or acts of negligence which caused the injury. In order to establish the application of this doctrine, plaintiff must show that the conclusion of negligence is the only reasonable inference possible from

the admitted circumstances. See *Ciociola v. Delaware Coca-Cola Bottling Company*, 3 Storey 477, 53 Del. 477, 172 A.2d 252 (Del. Supreme Court, 1961).

In the instant case, defendant concedes that it had exclusive control over the food in question from the moment of manufacture until the moment of delivery to plaintiff. No allegation is made that the foreign substance could have been added subsequent to delivery to plaintiff. The factual circumstances of this case are therefore distinguishable from the Ciociola case, cited supra, in which the Court noted that the defect could have occurred prior to defendant's exercise of control over the object or subsequently to delivery to plaintiff.

This case is substantially identical to *Corin v. S. S. Kresge Co.*, 110 N. J. L. 378, 166 A. 291 (1933) in which the plaintiff sustained injuries as a result of glass concealed in coleslaw and in which the Court held that the presence of an injurious foreign substance in food justifies an inference of negligence. As the Court stated in *Quinn v. Swift & Co.*, 20 F. Supp. 234 (U.S.D.C.M.D.Pa., 1937):

"The great weight of authority is to the effect that a presumption of negligence arises, or the jury may infer negligence, from the presence of a foreign substance in food." (At page 236).

This rule has previously been applied by this Court. See *Williams v. General Baking Co.*, 9 Terry 104, 48 Del. 104, 98 A.2d 779 (Del. Superior Court, 1953).

Defendant argues, however, that even assuming the application of the doctrine of res ipsa loquitur, it has conclusively rebutted any inference of negligence. Specifically, defendant points to the testimony of a supervisor of its Philadelphia food processing plant and of a manager of the restaurant in question. In the first place, while this testimony is designed to show proper inspection for foreign substances, the presence of a foreign substance in food delivered to a patron justifies an inference of negligence not only in failure to find the substance but also in the act of placing the substance in the food. Secondly, in my opinion, this testimony does not remove the inference

of negligence in the failure to find the foreign substance.

With respect to the testimony concerning the manufacturing of the food, it is clear that no person was charged with the responsibility of inspecting each and every batch of coleslaw. Random sampling of the coleslaw did take place, and individual inspection of the delivery cans prior to use were also made. After the arrival of the coleslaw at the restaurant, the food was left uncovered for a period of time, and was transferred from larger to smaller tins and again left uncovered. The only testimony with respect to inspection is the manager's statement that waitresses were instructed not to serve food that does not look, taste, or smell wholesome. With respect to the question of whether or not the food tastes wholesome, other testimony of the manager indicates that only random samplings of the individual food took place.

From the testimony provided by the manager, it appears clear that there was no specific continuous inspection designed to disclose the presence of foreign objects in the food at the restaurant. Even assuming that the inspection provided by the employees of the Philadelphia plant was a sufficient exercise of due care, this inspection would not be sufficient to remove the inference of negligence from a trier of the fact because of the intervening activities of other employees of defendant. See *Howard v. Food Fair Stores, New Castle, Inc.,* 201 A.2d 638 (Del. Supreme Court, 1964). I therefore find that defendant failed to exercise a proper degree of care to prevent the appearance of a foreign substance in the food served to plaintiff.

With respect to the question of damages, the undisputed medical expenses shown at trial amount to $83.95. As noted above, there is no claim for lost wages. It appears uncontradicted that Mrs. Dickens sustained severe pain for some time immediately subsequent to the accident, but I am of the opinion that a consideration of all the evidence indicates that this pain had substantially subsided by the end of April, 1961. A more complex problem is presented by the claimed nervous condition of plaintiff. Plaintiff's expert witness upon this subject was her family physician, who stated at one point: "Now I can't attribute it all to this business of the wound to her jaw * * *"

(Transcript, Page 56.) However, subsequent testimony by Dr. Lyons indicates that he believed the nervous condition to be "related" to the incident and that plaintiff had not displayed such anxiety prior to the accident. Plaintiff's testimony of anxiety and discomfort subsequent to the accident is further coroborated by the testimony of her husband. I, therefore, hold that plaintiff is entitled to reasonable compensation for such discomfort which flowed from the incident.

After considering all of the testimony and evidence, I am of the opinion that One Thousand Five Hundred ($1,500.00) Dollars should be awarded as damages to Ethel Dickens, and that Five Hundred ($500.00) Dollars should be awarded as damages to Ernest Dickens, her husband, together with costs.

Order accordingly.