Charles L. **HANDY** and **Bird-In-Hand Poultry Co.**, a corporation of the Commonwealth of Pennsylvania, Plaintiffs,

v.

**UNIROYAL, INC.**, a New Jersey corporation, Defendant.

Civ. A. No. 3667.

United States District Court,
D. Delaware.

May 26, 1971.

William F. Taylor and Jack B. Jacobs, of Young, Conaway, Stargatt & Taylor, Wilmington, Del., for plaintiffs.

Howard L. Williams and Jay Paul James, of Morris, James, Hitchens & Williams, Wilmington, Del., for defendant.

## OPINION

LATCHUM, District Judge.

This is a products liability suit brought by Charles L. Handy ("Handy"), a citizen of Delaware, and his employer, the Bird-In-Hand Poultry Co. ("Bird-In-Hand"), a Pennsylvania corporation, against Uniroyal, Inc. ("Uniroyal"), a New Jersey corporation.[1] The case is presently before the Court on the defendant's motion for partial summary judgment under Rule 56 (b), F.R.Civ.P.

The relevant undisputed facts may be summarized as follows: On September 28, 1966, Bird-In-Hand purchased a new 10.00–20 PR Fleet T Special U. S. Royal Tire, manufactured by Uniroyal, from the Trail Mobile division of Pullman, Inc. in Lancaster, Pennsylvania. At

---

1. The case was originally filed in the Superior Court of New Castle County, Delaware and removed to this Court pursuant to a motion made under 28 U.S.C. § 1441. The amount in controversy exceeds $10,000. See Handy v. Uniroyal, Inc., 298 F.Supp. 301 (D.Del.1969).

that time the tire was mounted on one of Bird-In-Hand's trailers. Shortly thereafter the tire was taken off and placed in storage for several months. On May 4, 1967 it was removed from storage and mounted on the front end of one of Bird-In-Hand's truck tractors by an employee of the Leaman Tire Company of Mount Joy, Pennsylvania.

On March 5, 1968 Handy drove the tractor from Selbyville, Delaware to Bird-In-Hand, Pennsylvania. On the return trip to Selbyville, about one mile north of St. Georges, Delaware on Route 13, the tractor swerved off of the road and collided with two parked trucks, resulting in extensive property damage to the three vehicles and personal injury to Handy. An examination of the tire in question revealed that it had blown out either before or during the collision.

In their suit, the plaintiffs contend that the tire blew out prior to the collision and was, in fact, the sole proximate cause of the accident. The plaintiffs' claims are grounded upon (a) breach of implied warranty, (b) negligence in the manufacture, handling and inspection of the tire, with *res ipsa loquitur* applying, and (c) strict liability in tort. The defendant has moved for partial summary judgment dismissing Handy's breach of implied warranty claim, denying the application of the doctrine of *res ipsa loquitur* to the case, and dismissing both plaintiffs' claims founded upon strict liability in tort.

First, the defendant contends that under the law of Pennsylvania applicable to the warranty claim, 12A P.S.Pa. § 2–318, Handy, being an employee of the purchaser of the tire and not a member of the purchaser's immediate family, has no cause of action as a matter of law, because he is not in privity with the manufacturer, Uniroyal. Second, the defendant argues that its lack of exclusive control of the tire after it was manufactured, plus several other factors, pre-

clude the application of the doctrine of *res ipsa loquitur* to the negligence claims in this case. Finally, the defendant contends that summary judgment should be granted in its favor on the tort claims based upon strict liability, because the law of Delaware, applicable to such claims, does not recognize the doctrine of strict liability in tort for defective products. A hearing on the motion was held March 29, 1971.

## Law To Be Applied

The plaintiffs maintain that the law of Delaware, not Pennsylvania, applies to the claims for breach of implied warranty because the claims sound in tort rather than contract. The Court, however, must reject the plaintiffs' contention.

Under Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) this Court in a diversity case must apply the conflict of law rules of Delaware. Both the Third Circuit Court of Appeals and this Court have held that a claim for breach of warranty is, under Delaware law, governed by the law of the place where the sale occurs. Prashker v. Beech Aircraft Corp., 258 F.2d 602, 607, 76 A.L.R.2d 78, 89 (C.A. 3, 1958), cert. den. 358 U.S. 910, 79 S.Ct. 236, 3 L.Ed.2d 230 (1958); Quandt v. Beech Aircraft Corp., 317 F.Supp. 1009, 1012 (D.Del. 1970). In Ciociola v. Delaware Coca-Cola Bottling Co., 3 Storey 477, 172 A. 2d 252, 256–257 (Del.Supr.1961) the Delaware Supreme Court rejected the contention that breach of warranty claims should be governed by *tort* rather than *contract* rules of law. It is therefore obvious that under Delaware law breach of waranty claims are considered to be contract rather than tort for conflict of law purposes.[2]

Actions for breach of contract, under Delaware law, are governed by the law of the place of performance.

2. Note also Tyre v. Causey, 4 Harr. 425, 426 (Del.Super.1846) where the Court distinguished between a tort action for deceit, in which scienter was required, and an action in assumpsit for breach of implied or express warranty, in which no scienter was required to be shown.

Canadian Industrial Alcohol Co. v. Nelson, 8 W.W.Harr. 26, 188 A. 39, 53 (Del.Supr.1936). Breach of a sales warranty occurs at the time of sale. Dietrich v. Badders, 4 Boyce 499, 90 A. 47, 49 (Del.Super.1913). Since it is undisputed that the sale of the tire took place in Pennsylvania, the breach of implied warranty claims are governed by the law of that state.

■ As to the tort claims it is undisputed that Delaware applies the law of the place of the tort, *lex loci delicti*. Friday v. Smoot, 8 Storey 488, 211 A.2d 594, 595 (Del.Supr.1965); Lumb v. Cooper, 266 A.2d 196, 197 (Del.Super. 1970); Hempstead v. General Fire Extinguisher Corp., 269 F.Supp. 109, 111 (D.Del.1967); Quandt v. Beech Aircraft Corp., *supra*, 317 F.Supp. at 1013. In Gorman v. Murphy Diesel Co., 3 Terry 149, 29 A.2d 145, 146 (Del.Super.1942), and in Pack v. Beech Aircraft Corp., 11 Terry 413, 132 A.2d 54, 56, 67 A.L.R.2d 207, 211 (Del.Supr.1957) "the place of the tort" for choice of law purposes was interpreted to mean the place the injury occurs. Therefore, since it is undisputed that the injuries complained of occurred in this state, Delaware tort law governs the claims founded upon tort, regardless of where any alleged negligence or defective manufacture may have occurred.

*Warranty Claim—Lack of Privity*

The defendant contends that under Section 2–318 of the Uniform Commercial Code ("U.C.C."), adopted in Pennsylvania, 12A P.S. Pa. § 2–318, Handy's breach of implied warranty claim is barred by lack of horizontal privity. Section 2–318 of the U.C.C. reads as follows:

"A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty."[3] 12A P.S.Pa. § 2–318.

In Hochgertel v. Canada Dry Corp., 409 Pa. 610, 187 A.2d 575 (1963) the Pennsylvania Supreme Court in construing Section 2–318 of the U.C.C., 12A P.S.Pa. § 2–318, held that an employee of a product's purchaser is not within the protection of the U.C.C.'s implied warranties, under Section 2–318, and thus his claim is barred by lack of privity. Later, *Hochgertel* was modified slightly by Yentzer v. Taylor Wine Co., 414 Pa. 272, 199 A.2d 463 (1964) to permit an employee, who himself is the actual purchaser of the product in question, to sue for breach of an implied warranty. See also Carney v. Barnett, 278 F.Supp. 572, 576 (E.D.Pa.1967).

In Kassab v. Central Soya, 432 Pa. 217, 246 A.2d 848, 852 (1968) the Pennsylvania Supreme Court held that privity was no longer necessary in breach of warranty suits against remote manufacturers. However, in the *Kassab* opinion the Court was careful to point out that its abolition of "vertical privity" in that case in no way disturbed the holding of *Hochgertel* or the requirement of "horizontal privity." See footnote 8, 246 A. 2d at 855 and discussion in text, pp. 855–856.

In Tucker v. Capitol Machine, Inc., 307 F.Supp. 291 (M.D.Pa.1969) the Court was presented with virtually the identical question raised in the instant suit. While the Court in *Tucker* denied a motion for summary judgment on the plaintiff's breach of warranty claim on the ground that the Court was unable to determine on the record before it whether Pennsylvania or Indiana law governed, the Court examined Section 2–318, *Hochgertel*, and *Kassab* at length. After a detailed discussion the Court in *Tucker* concluded that the employee plaintiff, injured by a machine purchased by his employer, could not maintain any action for breach of implied

3. Delaware did not adopt this recommended draft of Section 2–318 of the U.C.C. See footnote 14, *infra*.

warranty, absent privity of contract, under Section 2–318, as interpreted by *Hochgertel*. The Court found the holding in *Hochgertel* to be unimpaired by *Kassab*. 307 F.Supp. at 293–294; see also Dyson v. General Motors Corp., 298 F.Supp. 1064, 1066 (E.D.Pa.1969).

■ Therefore, the Court holds that under Pennsylvania law, Handy, as an employee of Bird-In-Hand who did not purchase the tire in question,[4] may not, as a matter of law, maintain an action for breach of implied warranty in view of his lack of contractual privity with Uniroyal. Accordingly, the defendant's motion for partial summary judgment dismissing Handy's claim for breach of implied warranty will be granted.

■ *Application of Res Ipsa Loquitur* [5]

The defendant has moved for partial summary judgment dismissing paragraph 19 of the plaintiffs' complaint which purports to invoke the doctrine of *res ipsa loquitur*.[6] The plaintiffs vigorously oppose the motion.

■ Unfortunately during the course of their arguments the parties have confused three separate propositions concerning circumstantial evidence inferences. Perhaps the primary reason for this confusion is the vague, imprecise language used in paragraph 19. Accepting the first and most logical interpretation, the paragraph appears to allege

that the tire in question blew out and that the occurrence of this alleged blowout entitles the plaintiffs to utilize the doctrine of *res ipsa loquitur* to establish by inference [7] that Uniroyal was negligent in the manufacture, handling, or inspection of the tire. The proposition thus asserted is that proof of the blowout will suffice to get the plaintiff's case before the jury on the issue of Uniroyal's negligence. Uniroyal denies this proposition and asserts that a blowout is as consistent with the absence of negligence on its part as with the existence of negligence, because of the reportedly numerous intervening factors to which the tire was subjected between the time it left Uniroyal's control and the time the accident happened. In addition, Uniroyal asserts that *res ipsa loquitur* cannot apply in this case because the tire was not in its exclusive control at the time the accident occurred. In discussing this argument Uniroyal apparently has concluded that paragraph 19 advances a second theory, that the plaintiffs' *proof of the wreck* would be enough to get their case before the jury on the issue of Uniroyal's negligence. When the plaintiffs attempt to refute Uniroyal's contentions by arguing that their evidence at trial will negative any intervening causation, they further confuse the situation by introducing a third proposition, that proof by them of a defect existing in the tire when it left Uniroyal's custody should enable them to

---

4. Since Handy had been working for Bird-In-Hand only one year prior to the March 1968 accident, he obviously could not have purchased the tire for Bird-In-Hand in September 1966. See Docket Item # 40, p. 132.

5. Under Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) in a diversity case this Court must apply the pertinent state rule of *res ipsa loquitur*, Williams v. Pennsylvania R. Co., 90 F.Supp. 69, 71 (D.Del. 1950), and of circumstantial evidence inferences. Ryan v. Adam Scheidt Brewing Co., 197 F.2d 614, 615–617 (C.A. 3, 1952).

6. Paragraph 19 reads as follows:
"19. Further, while defendant controlled and exclusively supervised the manufacture of said tire and retained said tire in its exclusive control during the period of manufacture, the tire suddenly and without warning and due to no external cause ruptured and blew out. By application of the doctrine of *res ipsa loquitur*, defendant was negligent with respect to the plaintiffs in the manufacture, handling, inspection and distribution of said tire."

7. In Delaware *res ipsa loquitur* establishes an "inference" of negligence which the jury is free to accept or reject; it does not establish a "presumption" of negligence. Scott v. Diamond State Telephone Co., 239 A.2d 703, 705 (Del.Supr.1968).

get their case before the jury on the issue of Uniroyal's negligence in the production of the tire. While the latter two theories do not appear to be encompassed within the language of paragraph 19, in order to avoid confusion at trial the Court will deal with all three individually.

The first theory set forth in paragraph 19 of the complaint is that, from the fact the tire blew out, it can be inferred that the defendant was negligent in the manufacture, handling, or inspection of the tire. This would in no way relieve the plaintiffs of their burden of proving that the blowout was the sole proximate cause of the accident.

At the outset it should be noted that, technically speaking, under Delaware law such an inference is not considered to be part of the doctrine of *res ipsa loquitur*. Instead it is considered to be part of the broader law of circumstantial evidence, though the difference is apparently only one of semantics. "The only difference, which is without real distinction, in *res ipsa loquitur* is that the sole circumstance from which an inference may be drawn is the injury itself." Skipper v. Royal Crown Bottling Company of Wilmington, Inc., 6 Storey 179, 192 A.2d 910, 912 (Del. Supr.1963); see Ciociola v. Delaware Coca-Cola Bottling Co., 3 Storey 477, 172 A.2d 252, 257–259 and 259–260 (Del.Supr.1961); Suburban Propane Gas Corp. v. Papen, 245 A.2d 795, 798 (Del.Supr.1968).

In order to use an inference such as the one first asserted in paragraph 19, certain rather rigid standards must be met. These were enunciated in Ciociola v. Delaware Coca-Cola Bottling Co., *supra*, 3 Storey at 487–488, 172 A.2d at 257, as follows:

"In order to prove the defendant's negligence by circumstantial evidence, however, it is necessary that the conclusion of negligence be the *only in-ference possible from the admitted circumstances*. If, therefore, the proven circumstances are as consistent with the absence of negligence as with the existence of negligence, neither conclusion can be said to have been established by legitimate proof and the issue may not therefore be submitted to the jury." (Emphasis added).

See also Wilson v. Derrickson, 4 Storey 199, 175 A.2d 400, 402 (Del.Supr.1961); Spotswood v. Dalious, 4 Storey 459, 180 A.2d 465 (Del.Supr.1962); Wilmington Housing Authority v. Williamson, 228 A.2d 782, 785 (Del.Supr.1967).

■■ From the depositions, affidavits, and documents already filed in this case it appears highly unlikely that the "only inference possible" from the blowout of the tire will be negligence in Uniroyal's production process.[8] However, since the Court can only speculate as to what will be proved at trial, at this time it is impossible to rule as a matter of law that this inference cannot be established by the plaintiffs. Consequently, any summary judgment motion as to this issue must be denied.

The second theory advanced from paragraph 19 is the application of what in Delaware is actually known as the doctrine of *res ipsa loquitur*. The doctrine of *res ipsa loquitur* would apply if the particular manner in which this accident occurred would lead reasonable men to conclude that, in the normal course of events, the accident would not have happened if the defendant had exercised due care in the manufacture, handling, or inspection of the tire in question.

■ Initially, the Court must reject the defendant's contention that lack of exclusive control makes the doctrine of *res ipsa loquitur* automatically inapplicable. It is true that originally under Delaware law *res ipsa loquitur* would not apply absent a showing that the thing causing injury had been in the *exclusive* control of the defendant. See

8. Obviously the mere fact that the tire blew out, with no evidence as to its custody, use, maintenance, etc., will not be sufficient to create an inference of negligence. See Prosser, Law of Torts 220 (3rd Ed. 1964).

Biddle v. Haldas Bros., 8 W.W.Harr. 210, 190 A. 588, 595 (Del.Super.1937); Slack v. Premier-Pabst Corp., 1 Terry 97, 5 A.2d 516 (Del.Super.1939); Hunter v. Quality Homes, Inc., 6 Terry 100, 68 A.2d 620, 624 (Del.Super.1949). However, in Delaware Coach Co. v. Reynolds, 6 Terry 226, 71 A.2d 69, 74–75 (Del.Supr.1950) the Delaware Supreme Court modified the *res ipsa loquitur* doctrine in Delaware to remove the requirement of exclusive control. See Ciociola v. Delaware Coca-Cola Bottling Co., 3 Storey 477, 491, 172 A.2d 252, 259 (Del. Supr.1961); Skipper v. Royal Crown Bottling Co. of Wilmington, Inc., 6 Storey 179, 192 A.2d 910, 912 (Del.Supr. 1963); National Fire Insurance Co. of Hartford v. Pennsylvania R. Co., 220 A. 2d 217, 220 (Del.Super.1966); Phillips v. Delaware Power & Light Co., 7 Storey 466, 202 A.2d 131, 132 (Del.Super. 1964); Williams v. General Baking Co., 9 Terry 104, 98 A.2d 779, 780 (Del. Super.1953).

Under Delaware law, to be entitled to the use of *res ipsa loquitur* a plaintiff must show that the *accident* or *injury* happened under such circumstances that in the ordinary course of events no accident or injury would have occurred absent the defendant's negligence. Delaware Coach Co. v. Reynolds, *supra*, 6 Terry 226, 71 A.2d at 73; Phillips v. Delaware Power & Light Co., *supra*, 7 Storey 466, 202 A.2d at 133; Skipper v. Royal Crown Bottling Company of Wilmington, Inc., *supra*, 6 Storey 179, 192 A.2d at 912; Williams v. Pennsylvania R. Co., 90 F.Supp. 69, 71 (D.Del.1950).

■■■ It has long been established by Delaware law that negligence is not presumed from the mere fact that an accident or injury occurs. Gismondi v. People's Ry. Co., 2 Boyce 577, 83 A. 136, 138 (Del.Super.1911); Gatta v. Philadelphia, B. & W. R. Co., 2 Boyce 551, 83 A. 788, 791 (Del.Super.1911), aff'd. 4 Boyce 38, 85 A. 721 (Del.Supr.1913); Reynolds v. Clark, 5 Boyce 250, 92 A. 873, 875 (Del.Super.1914). It is also well established that, for the doctrine of *res ipsa loquitur* to apply, *the occurence*

*of the accident itself* must make out a prima facie case of negligence. Edmanson v. Wilmington & Philadelphia Traction Co., 2 W.W.Harr. 177, 120 A. 923, 925 (Del.Super.1923); Cf. Thompson v. Cooles, 7 W.W.Harr. 83, 180 A. 522, 525 (Del.Super.1935). Chief Justice Lore stated it thusly in Wood v. Wilmington City Ry. Co., 5 Pennewill 369, 64 A. 246, 247 (Del.Super.1905):

> "Negligence is never presumed. It must be proved. The plaintiffs, however, in this case claim the benefit of the doctrine of 'res ipsa loquitur'; that is, that *the accident itself, with all its surroundings,* speaks in such way and is of such a character as to show negligence on the part of the defendant company." (Emphasis added).

In Starr v. Starr, 5 W.W.Harr. 556, 170 A. 924 (Del.Super.1934) an invited guest in an automobile sued her host for injuries she received when her host's automobile skidded off the road, relying upon *res ipsa loquitur*. Chief Justice Layton sustained a demurrer to the count of the declaration asserting the application of *res ipsa loquitur* on the ground that the mere fact that the automobile skidded was not an occurrence of such uncommon or unusual character that the jury could find the driver negligent without additional evidence.

In McGuire v. McCollum, 10 Terry 359, 116 A.2d 897 (Del.Super.1955) a pedestrian was struck and killed by an automobile driven by the defendant. On a motion for summary judgment Judge (now Justice) Carey held that *res ipsa loquitur* did not come into play merely because an automobile caused the death of a pedestrian. There being no direct evidence from which the jury could determine proximate cause, he granted the motion for summary judgment.

■■■ The present case is similar. The mere fact that the truck left the road and crashed into two parked vehicles could not, standing by itself, create an inference that the manufacturer of one of the tires on the truck was negli-

gent in the manufacture, handling or inspection of the tire. Therefore, the doctrine of *res ipsa loquitur* has no application to the present case.

The third theory, derived from paragraph 19, involving circumstantial evidence inferences under Delaware law is that if it could be proved that the tire had a defect in it at the time it left Uniroyal's custody, the plaintiffs would be entitled to an inference that the tire was negligently manufactured, handled, or inspected. As with the first theory advanced in argument on the present motion, this would not, strictly speaking, be part of the doctrine of *res ipsa loquitur*.

■ From the existence of a serious defect in a product at the time it leaves the manufacturer's control, there can be an inference that the manufacturer was negligent in the manufacture, handling, or inspection of the product. Cf. Ciociola v. Delaware Coca-Cola Bottling Co., *supra*, 3 Storey 477, 172 A.2d at 257–259. If at trial the plaintiffs are able to prove facts sufficient to justify this inference, they will be entitled to a proper jury instruction covering the matter. It will be necessary for the plaintiffs to establish the existence of the defect, the fact that the defect existed at the time it left the defendant's custody and was not caused by any intervening event, and that the defect was the sole proximate cause of the accident which resulted in the damages sustained.

■ Since it is purely conjectural as to whether these necessary facts will be shown at trial, it is obviously impossible for the Court to make a definitive ruling on the matter at this time. Consequently, any summary judgment motion on the third possible theory must be denied.

*Strict Liability In Tort*

The defendant has moved for summary judgment dismissing both plaintiffs' claims based upon the theory of strict liability in tort. The defendant contends that Delaware has not adopted the doctrine of strict liability in tort set

forth in Restatement (Second) of Torts § 402A (1965), and would not adopt this doctrine or apply it to the present case. The plaintiffs argue that Delaware would adopt Restatement § 402A and would apply it to this case.

The United States Supreme Court in Erie R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188, 114 A.L.R. 1487, 1492–1493 (1938) stated:

"Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State. And whether the law of the State shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern. There is no federal general common law. Congress has no power to declare substantive rules of common law applicable in a State whether they be local in their nature or 'general,' be they commercial law or a part of the law of torts. And no clause in the Constitution purports to confer such a power upon the federal courts."

See also New York Life Ins. Co. v. Lawson, 134 F.Supp. 63, 66 (D.Del.1955); Aetna Insurance Co. v. Newton, 274 F.Supp. 566, 570 (D.Del.1967), appeal dismissed 398 F.2d 729 (C.A.3, 1968).

■ In a diversity case where the state courts have not passed on an issue specifically it is the duty of this Court to determine the law of Delaware from an examination of all available data. Wilmington Trust Co. v. Mutual Life Insurance Co., 68 F.Supp. 83, 85–86 (D.Del.1946), 76 F.Supp. 560, 564–565 (D.Del.1948), aff'd 177 F.2d 404, 406 (C.A.3, 1949), cert. den. 339 U.S. 931, 70 S.Ct. 665, 94 L.Ed. 1351 (1950); State of Maryland to Use of Carson v. Acme Poultry Corp., 9 F.R.D. 687, 689–690 (D.Del.1949).

A brief examination of the history of strict liability will perhaps place the issue in perspective.

According to Dean Prosser the earliest common law application of strict liability in tort was to the owners of ani-

mals, for damages caused by trespassing animals and for injuries caused by dangerous or vicious animals. Prosser, Law of Torts 506–517 (3rd Ed. 1964). Strict liability for damages caused by trespassing animals has been the law of Delaware, by legislative enactment, since 1770. 13 Geo. II, 1 Del.Laws, Ch. 70, pp. 180–182, now codified as 25 Del.C. § 1302.[9] Common law liability for harm from dangerous or vicious animals has long been recognized in Delaware. A number of cases, dating from the Nineteenth Century, have held owners strictly liable in tort for injuries caused by their dangerous or vicious animals. See Warner v. Chamberlain, 7 Houst. 18, 30 A. 638 (Del.Super.1884); Barclay v. Hartman, 2 Marv. 351, 43 A. 174 (Del. Super.1896); and Friedmann v. McGowan, 1 Pennewill 436, 42 A. 723 (Del. Super.1898).[10]

In F. Giovannozzi & Sons v. Luciani, 2 Terry 211, 18 A.2d 435, 436–437 (Del. Super. 1941) Chief Justice Layton,[11] specifically rejected the contention that a claim of negligence was necessary in a case involving a dangerous or vicious animal. After careful consideration of the common law rule and the Delaware cases applying it, the Chief Justice held that the common law rule of strict liability in tort, without negligence, for dangerous or vicious animals, was, and had always been, the law of Delaware. This decision has been reaffirmed in Duffy v. Gebhart, 2 Storey 312, 157 A.2d 585 (Del.Super.1960) and, more recently, in Richmond v. Knowles, 265 A.2d 53, 55 (Del.Super.1970).

The extension of strict liability in tort to encompass abnormally dangerous instrumentalities and activities is generally considered to have developed as the result of the 1868 decision of the British House of Lords in Rylands v. Fletcher,

L.R. 3 H.L. 330, 1 Eng.Rul.Cas. 236, 256 (House of Lords 1868), involving the escape of water from an artificial pond onto the plaintiff's land. Prosser, supra at 519. However, without specifically mentioning the case by name, the courts of Delaware rejected the doctrine of Rylands v. Fletcher in Mills v. Wilmington City Ry. Co., 1 Marv. 269, 40 A. 1114, 1115 (Del.Super.1894) (blasting), and Fahey v. Niles, 7 Boyce 454, 108 A. 135, 136 (Del.Super.1918) (use of gasoline torch).

In 1950 in Fritz v. E. I. Du Pont de Nemours & Co., 6 Terry 427, 75 A.2d 256, 258–261 (Del.Super.1950) (escape of chlorine gas) Judge Terry specifically considered the question of whether Delaware should adopt the doctrine of Rylands v. Fletcher. After an extensive discussion of the doctrine and the cases from other jurisdictions applying it, Judge Terry rejected the Rylands decision in toto, saying that it would "strangle corporate and individual enterprise in many well recognized fields of endeavor." 6 Terry at 438, 75 A.2d at 261. The decision in Fritz was followed in Fine v. Mayor & Council of Wilmington, 8 Terry 539, 94 A.2d 393, 396 (Del. Super.1953) (bursting water meter). The first significant erosion of Mills and Fritz came in Judge Stiftel's ruling in Vattilana v. George & Lynch, Inc., 2 Storey 168, 154 A.2d 565 (Del.Super. 1959) that res ipsa loquitur could be used in a blasting case to shift the burden of going forward with the evidence upon the defendant, and that res ipsa loquitur could be utilized even though specific acts of negligence were alleged.

In 1964 in Catholic Welfare Guild, Inc. v. Brodney Corp., 8 Storey 246, 208 A.2d 301 (Del.Super.1964), Judge Lynch refused to follow Fritz or Mills and instead adopted the doctrine of

---

9. According to Prosser the early common law rule as to trespassing animals was not generally followed in the American colonies absent a statute specifically adopting the rule. Prosser, supra at 512.

10. Jones v. Carey, 9 Houst. 214, 31 A. 976 (Del.Super.1891) was tried on the

theory of negligence and not strict liability. Brown v. Green, 1 Pennewill 535, 42 A. 991 (Del.Super.1899) seemed to regard the keeping of dangerous or vicious animals as negligence per se.

11. Judge Richards and Judge Terry also joined in the opinion.

Rylands v. Fletcher and the accompanying rule of strict liability for blasting. While *Catholic Welfare Guild* has not been explicitly approved by the Delaware Supreme Court, in Jackson v. Hearn Bros., Inc., 212 A.2d 726, 727 (Del.Supr. 1965) the Court assumed without deciding that the doctrine of Rylands v. Fletcher would apply in Delaware, and cited with evident approval Restatement of Torts § 520 (1938) based upon *Rylands*. Cf. Ciociola v. Delaware Coca-Cola Bottling Co., 3 Storey 477, 172 A.2d 252, 259 (Del.Supr.1961).[12]

An unsuccessful attempt has been made in Delaware to expand the doctrine of Rylands v. Fletcher into the products liability area by arguing that when an otherwise innocuous article contains defects it automatically becomes an abnormally dangerous instrumentality. This theory, closely akin to Restatement § 402A strict liability, has been uniformly rejected in the reported cases, both before and since the *Catholic Welfare Guild* case. See Hartford Accident & Indemnity Co. v. Anchor Hocking Glass Corp., 5 Terry 39, 55 A.2d 148, 150 (Del.Super.1947) (jelly jar which shattered); Behringer v. William Gretz Brewing Co., 3 Storey 365, 169 A.2d 249, 251–252 (Del.Super.1961) (cardboard beer carton which collapsed); Ciociola v. Delaware Coca-Cola Bottling Co., 3 Storey 477, 172 A.2d 252, 259 (Del.Supr. 1961) (soft drink bottle which broke); Jackson v. Hearn Bros., Inc., 212 A.2d 726, 727 (Del.Supr.1965) (shopping cart which hit customer); Kates v. Pepsi Cola Bottling Co. of Salisbury, Maryland, Inc., 263 A.2d 308, 312 (Del.Super. 1970) (cardboard bottle carton which fell apart); Cf. Gorman v. Murphy Diesel Co., 3 Terry 149, 29 A.2d 145, 147 (Del.Super.1942) (internal combustion engine which exploded); Hunter v. Quality Homes, Inc., 6 Terry 100, 68 A.

2d 620, 622–623 (Del.Super.1949) (oil furnace which blew up). In a recent unreported decision of the Superior Court, Burnstein v. General Tire & Rubber Co., Civil Action No. 632, 1966 (Del.Super. March 11, 1969), involving an allegedly defective tire, the same contention was again rejected, President Judge Stiftel stating in dicta, "A tire is not inherently dangerous. [Citation omitted.] Before liability can apply, the manufacturer must be shown to be at fault."

Triggered by a 1913 case from Washington State many American jurisdictions have extended strict liability in tort beyond Rylands v. Fletcher to cover the sale of food and drink. See Prosser, supra at 674 and Prosser, "The Assault Upon the Citadel," 69 Yale L.J. 1099, 1103–1110 (1960). However, in 1925 Delaware rejected strict liability in tort for food and drink in the case of Roseberry v. Wachter, 3 W.W.Harr. 253, 138 A. 273 (Del.Super.1925), a holding which was specifically reaffirmed in 1943 by Pappa v. F. W. Woolworth Co., 3 Terry 358, 33 A.2d 310, 311–312 (Del. Super.1943). The impact of this has been softened somewhat by the application of *res ipsa loquitur*, see Williams v. General Baking Co., 9 Terry 104, 98 A. 2d 779 (Del.Super.1953); Dickens v. Horn & Hardart Baking Co., 8 Storey 316, 209 A.2d 169, 171–172 (Del.Super. 1963), and in Ciociola v. Delaware Coca-Cola Bottling Co., *supra*, 3 Storey at 486, 172 A.2d at 257 the Delaware Supreme Court stated that "the mere presence of an impurity in a product intended for human consumption, packaged and sold in a sealed container, possibly justifies an inference of negligence on the part of the manufacturer sufficient to support an action based on negligence."

---

12. In Hercules Powder Co. v. DiSabatino, 5 Storey 516, 188 A.2d 529, 533 (Del. Supr.1963) the Delaware Supreme Court rejected strict liability as to electricity and in Suburban Propane Gas Corp. v. Papen, 245 A.2d 795, 798 (Del.Supr. 1968) as to propane gas, but it is unclear whether the Court did so on the basis that electricity and gas are in such commonplace use today that they are not abnormally dangerous instrumentalities or on some other basis.

In 1965 in Dickens v. Horn & Hardart Baking Co., *supra*, 8 Storey 316, 209 A. 2d at 170–171, Judge Storey noted that *Roseberry* and *Pappa* had come to reflect a distinctly minority view. While he urged the adoption of implied warranty liability, later actually adopted by the U.C.C., Judge Storey felt compelled to follow *Roseberry* and *Pappa* and require a showing of negligence in order for the plaintiff in the case to recover for injuries caused by metal slivers in a dish of coleslaw.

An expanded theory of strict liability in tort for all defective products was first enunciated by Justice (later Chief Justice) Roger J. Traynor of the California Supreme Court in his concurring opinion in Escola v. Coca Cola Bottling Co., 24 Cal.2d 453, 461, 150 P.2d 436, 440 (1944). Despite some academic rumblings, the concept lay dormant for many years. In 1963 in the landmark case of Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049 (1963) Justice Traynor's lone concurring opinion of 1944 was unanimously adopted by the California Supreme Court. The Court in *Greenman*, in an opinion authored by Justice Traynor, held:

> "A manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being." 27 Cal.Rptr. at 700, 377 P.2d at 900, 13 A.L.R.3d at 1054.

By 1965 the doctrine of strict liability in tort for defective products, announced in *Greenman*, had become so widespread throughout the country that the American Law Institute adopted Restatement (Second) of Torts § 402A (1965), which reads:

> "§ 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer.
>
> "(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
>> "(a) the seller is engaged in the business of selling such a product, and
>>
>> "(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
>
> "(2) The rule stated in Subsection (1) applies although
>
>> "(a) the seller has exercised all possible care in the preparation and sale of his product, and
>>
>> "(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

At the present time it appears that judicial decisions in over half of the states have adopted and applied § 402A strict liability. See 2 Frumer and Friedman, Products Liability § 16A and Annotation: Products Liability: Strict Liability in Tort, 13 ALR 3d 1057, 1071–1073.[13]

In Ciociola v. Delaware Coca-Cola Bottling Co., 3 Storey 477, 172 A.2d 252, 256–257 (Del.Supr.1961) the Delaware Supreme Court considered the argument that strict liability either in tort or warranty should be imposed for defective products. In *Ciociola* the Court rejected the doctrine of strict liability in tort for

13. A possibly incomplete list includes Alaska, Arizona, California, *Colorado*, Connecticut, Illinois, *Indiana*, Iowa, Kentucky, *Louisiana*, Michigan, Minnesota, Mississippi, Missouri, *Montana*, Nevada, New Hampshire, New Jersey, *New Mexico*, *New York*, Ohio, *Oklahoma*, Oregon, Pennsylvania, *Rhode Island*, Tennessee, Texas, Washington and Wisconsin. *(Italics* indicates Federal court predictions, per *Erie).* Maryland has rejected § 402A and Federal courts in Georgia, Arkansas and North Dakota have predicted rejection in those states.

an allegedly defective soft drink bottle and held that the breach of implied warranty claim asserted was barred by lack of privity. In addition the Court refused to apply the doctrine of Rylands v. Fletcher to the case "because a glass bottle is not inherently a dangerous instrumentality." 3 Storey at 491, 172 A. 2d at 259. The Delaware General Assembly reacted to *Ciociola* by passing 5A Del.C. § 2–318 as part of the U.C.C. in place of the recommended draft of Section 2–318.[14] In adopting this, the Delaware Uniform Commercial Code Committee stated:

> "The case law in most of the larger commercial states has resulted in large measure in the abolition of the privity requirement and the adoption of a rule which is substantially in accord with the version of § 2–318 adopted by Delaware. The Delaware Uniform Commercial Code Committee is of the opinion that the recommended amendment is reasonable, is in accord with modern commentaries, and will bring the Delaware law in substantial conformity with the law of a number of states (including the larger commercial states) which have adopted the Code. The variation in the language of § 2–318 is required to accomplish this purpose because of the decision of the Delaware Supreme Court in Ciociola v. Delaware Coca Cola Bottling Co., 53 Delaware 477, 172 A.2d 252 (1961). In that case the Court held that Delaware was committed to the common law rule governing actions for breach of implied warranties, and that any change would have to be made by the Legislature rather than the Judicial Branch."

The legislature did not then nor has it since adopted strict liability in tort for defective products or indicated any intent to alter *Ciociola's* rejection of that theory.[15]

Kates v. Pepsi Cola Bottling Co. of Salisbury, Maryland, Inc., 263 A.2d 308, 311–312 (Del.Super.1970) cited Restatement § 402A but seemed to interpret it to mean that the defective product in its non-defective state must be abnormally or "imminently dangerous" for § 402A to apply. However, it is clear from the language used that Judge Storey was only rejecting an extension of the doctrine of Rylands v. Fletcher and did not intend to imply that Delaware would adopt § 402A. Note Comment i to Restatement § 402A. In a recent case in the Superior Court involving an allegedly defective tire, Wolf v. U-Haul Co., Civil Action No. 253, 1969, which was tried November 9–12, 1970, Judge McNeilly rejected the argument that § 402A strict liability in tort should be applied and directed a verdict on the strict liability claims.

▬ No Delaware state court case has been cited to this Court in which § 402A strict liability has been adopted or approved. The Delaware courts, particularly in the recent cases discussed, have had ample opportunity to adopt strict liability in tort. It would appear that by their silence on the issue and by their emphasis on liability based upon negligence and warranty, the Delaware state courts have rejected § 402A strict liability in tort. Therefore, it is the opinion of this Court, after a careful consideration of the relevant data discussed herein, that strict liability in tort for defective products, as described in Restatement (Second) of Torts § 402A (1965), is not the law of Delaware. Consequently, the defendant's motion for

---

14. The text of 5A Del.C. § 2–318 reads as follows:

"A sellers warranty whether express or implied extends to any natural person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty. A seller may not exclude or limit the operation of this section." 5A Del.C. § 2–318.

15. By statute aircraft owners are strictly liable for all personal injuries arising out of the operation of the aircraft. 2 Del. C. § 305. However, this statute was passed in the 1930's long before *Ciociola*.

summary judgment dismissing the plaintiffs' strict liability claims will be granted.

Submit order in accordance with this opinion.